# HAWKE *v.* SMITH, SECRETARY OF STATE OF OHIO. (No. 1.)

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 582.   Argued April 23, 1920.—Decided June 1, 1920.

Under the Constitution, Art. V, a proposed amendment can be ratified by two methods only,— by the legislatures of three-fourths of the States or by conventions in three-fourths of the States. the choice of method being left to Congress. P. 226.

The term "legislatures" as used here and elsewhere in the Constitu-

tion, means the deliberative, representative bodies that make the laws for the people of the respective States; the Constitution makes no provision for action upon such proposals by the people directly. P. 227.

The function of a state legislature in ratifying a proposed amendment to the Federal Constitution, like the function of Congress in proposing such amendments, is a federal function, derived not from the people of that State but from the Constitution. P. 230.

The ratification of a proposed amendment to the Federal Constitution by the legislature of a State is not an act of legislation, in the proper sense of the word; it is but the expression of the assent of the State to the proposed amendment. P. 229. *Davis* v. *Hildebrant*, 241 U. S. 565, distinguished.

The action of the General Assembly of Ohio ratifying the proposed Eighteenth Amendment cannot be referred to the electors of the State, the provisions of the state constitution requiring such a referendum being inconsistent with the Constitution of the United States. P. 231.

100 Ohio St. 385, reversed.

THE case is stated in the opinion.

*Mr. J. Frank Hanly,* with whom *Mr. George S. Hawke, Mr. Arthur Hellen, Mr. Charles B. Smith, Mr. James Bingham* and *Mr. Remster A. Bingham* were on the brief, for plaintiff in error.

*Mr. Lawrence Maxwell,* with whom *Mr. John G. Price,* Attorney General of the State of Ohio, *Mr. Judson Harmon* and *Mr. B. W. Gearheart* were on the brief, for defendant in error:

The Constitution of the United States does not require that the States shall have any particular form of legislature. The people of the States have the power to abolish their general assemblies and to take into their own hands all matters of legislation. They have the power to provide that no legislation shall be enacted by the general assembly without being first submitted to the people for approval. And they have the power to do, as they have

in fact done, in all referendum States, namely, to provide that all, or any particular class, of legislative acts shall stand suspended for a specified time after adjournment of the general assembly, and if, during that time a referendum is duly ordered, that the legislation shall remain suspended and inoperative until the next general election and take effect or not according to the result of the popular vote thereon.  They may also provide, as has been done in two of the States, that no legislature or convention shall act upon any proposed amendment to the Constitution of the United States, except a legislature or convention elected after such amendment is submitted.  Constitution, Tennessee, 1870, Art. II, § 32; Florida, 1885, Art. XVI, § 19.

The Federal Constitution confers no power upon the state legislature.  It gets all of its power from the people of the State.  Such authority as the legislatures have to ratify amendments to the Federal Constitution is not mandatory but permissive.  Congress merely proposes amendments and it is provided that if they shall be ratified by the "legislatures" of a sufficient number of the States, they become part of the Federal Constitution. Such amendments are submitted to the legislative or lawmaking power of each State whatever its form or constitution, as distinguished from its executive or judicial power. If a State should abolish its general assembly and resort to direct legislation in all instances, it would thereby, according to the opposing argument, deprive itself of the power to act upon proposed constitutional amendments. If more than one-fourth of the States should adopt that policy there would not then remain three-fourths of the several States capable of ratifying a federal amendment.

But if we assume, for the sake of discussion, that the general assembly of the State must have the final word in ratifying amendments to the Federal Constitution in cases where the State ratifies, it must be admitted that it

speaks, not for itself, but for the people of the State, and it follows that the people, in their state constitutions, may provide that the action of the general assembly shall be conditional upon popular rejection or approval at the polls.

In such a case the action of the general assembly, if approved by referendum, is a ratification by the "legislature." If rejected, there is no ratification by the legislature of that State. No expressed prohibition of such a form of state government is found in the Federal Constitution and none should be inferred. Citing: *Davis* v. *Hildebrant*, 94 Ohio St. 154; aff'd 241 U. S. 565; *Hawke* v. *Smith*, 100 Ohio St. 385; *State* v. *Howell*, 107 Washington, 167.

*Mr. Wayne B. Wheeler* and *Mr. James A. White*, by leave of court, filed a brief as *amici curiæ*.

MR. JUSTICE DAY delivered the opinion of the court.

Plaintiff in error (plaintiff below) filed a petition for an injunction in the Court of Common Pleas of Franklin County, Ohio, seeking to enjoin the Secretary of State of Ohio from spending the public money in preparing and printing forms of ballot for submission of a referendum to the electors of that State on the question of the ratification which the General Assembly had made of the proposed Eighteenth Amendment to the Federal Constitution. A demurrer to the petition was sustained in the Court of Common Pleas. Its judgment was affirmed by the Court of Appeals of Franklin County, which judgment was affirmed by the Supreme Court of Ohio, and the case was brought here.

A joint resolution proposing to the States this Amendment to the Constitution of the United States was adopted on the third day of December, 1917. The Amendment prohibits the manufacture, sale or transportation of

intoxicating liquors within, the importation thereof into, or the exporation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes. The several States were given concurrent power to enforce the Amendment by appropriate legislation. The resolution provided that the Amendment should be inoperative unless ratified as an Amendment of the Constitution by the legislatures of the several States, as provided in the Constitution, within seven years from the date of the submission thereof to the States. The Senate and House of Representatives of the State of Ohio adopted a resolution ratifying the proposed Amendment by the General Assembly of the State of Ohio, and ordered that certified copies of the joint resolution of ratification be forwarded by the Governor to the Secretary of State at Washington and to the presiding officer of each house of Congress. This resolution was adopted on January 7, 1919; on January 27, 1919, the Governor of Ohio complied with the resolution. On January 29, 1919, the Secretary of State of the United States proclaimed the ratification of the Amendment, naming thirty-six States as having ratified the same, among them the State of Ohio.

The question for our consideration is: Whether the provision of the Ohio constitution, adopted at the general election, November, 1918, extending the referendum to the ratification by the General Assembly of proposed amendments to the Federal Constitution is in conflict with Article V of the Constitution of the United States. The Amendment of 1918 provides: "The people also reserve to themselves the legislative power of the referendum on the action of the general assembly ratifying any proposed amendment to the constitution of the United States." Article V of the Federal Constitution provides: "The Congress, whenever two-thirds of both houses shall deem it necessary, shall propose amendments

to this Constitution; or, on the application of the legislatures of two-thirds of the several States, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three-fourths of the several States, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the Congress; provided that no amendment which may be made prior to the year one thousand eight hundred and eight shall in any manner affect the first and fourth clauses in the ninth section of the first article; and that no State, without its consent, shall be deprived of its equal suffrage in the Senate."

The Constitution of the United States was ordained by the people, and, when duly ratified, it became the Constitution of the people of the United States. *McCulloch* v. *Maryland*, 4 Wheat. 316, 402. The States surrendered to the general government the powers specifireally conferred upon the Nation, and the Constitution and the laws of the United States are the supreme law of the land.

The framers of the Constitution realized that it might in the progress of time and the development of new conditions require changes, and they intended to provide an orderly manner in which these could be accomplished; to that end they adopted the Fifth Article.

This article makes provision for the proposal of amendments either by two-thirds of both houses of Congress, or on application of the legislatures of two-thirds of the States; thus securing deliberation and consideration before any change can be proposed. The proposed change can only become effective by the ratification of the legislatures of three-fourths of the States, or by conventions in a like number of States. The method of ratification is left to the choice of Congress. Both methods of ratification, by legislatures or conventions, call for

action by deliberative assemblages representative of the people, which it was assumed would voice the will of the people.

The Fifth Article is a grant of authority by the people to Congress. The determination of the method of ratification is the exercise of a national power specifically granted by the Constitution; that power is conferred upon Congress, and is limited to two methods, by action of the legislatures of three-fourths of the States, or conventions in a like number of States. *Dodge* v. *Woolsey,* 18 How. 331, 348. The framers of the Constitution might have adopted a different method. Ratification might have been left to a vote of the people, or to some authority of government other than that selected. The language of the article is plain, and admits of no doubt in its interpretation. It is not the function of courts or legislative bodies, national or state, to alter the method which the Constitution has fixed.

All of the amendments to the Constitution have been submitted with a requirement for legislative ratification; by this method all of them have been adopted.

The only question really for determination is: What did the framers of the Constitution mean in requiring ratification by *"Legislatures"?* That was not a term of uncertain meaning when incorporated into the Constitution. What it meant when adopted it still means for the purpose of interpretation. A Legislature was then the representative body which made the laws of the people. The term is often used in the Constitution with this evident meaning. Article I § 2, prescribes the qualifications of electors of congressmen as those "requisite for electors of the most numerous branch of the state legislature." Article I, § 3, provided that senators shall be chosen in each State by the legislature thereof, and this was the method of choosing senators until the adoption of the Seventeenth Amendment which made

provision for the election of senators by vote of the people, the electors to have the qualifications requisite for electors of the most numerous branch of the state legislature. That Congress and the States understood that this election by the people was entirely distinct from legislative action is shown by the provision of the amendment giving the legislature of any State the power to authorize the Executive to make temporary appointments until the people shall fill the vacancies by election. It was never suggested, so far as we are aware, that the purpose of making the office of Senator elective by the people could be accomplished by a referendum vote. The necessity of the amendment to accomplish the purpose of popular election is shown in the adoption of the amendment. In Article IV the United States is required to protect every State against domestic violence upon application of the legislature, or of the Executive when the legislature cannot be convened. Article VI requires the members of the several legislatures to be bound by oath, or affirmation, to support the Constitution of the United States. By Article I, § 8, Congress is given exclusive jurisdiction over all places purchased by the consent of the legislature of the State in which the same shall be. Article IV, § 3, provides that no new States shall be carved out of old States without the consent of the legislatures of the States concerned.

There can be no question that the framers of the Constitution clearly understood and carefully used the terms in which that instrument referred to the action of the legislatures of the States. When they intended that direct action by the people should be had they were no less accurate in the use of apt phraseology to carry out such purpose. The members of the House of Representatives were required to be chosen by the people of the several States. Article I, § 2.

The constitution of Ohio in its present form, although

making provision for a referendum, vests the legislative power primarily in a General Assembly consisting of a Senate and House of Representatives. Article II, § 1, provides:

"The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives, but the people shall reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided."

The argument to support the power of the State to require the approval by the people of the State of the ratification of amendments to the Federal Constitution through the medium of a referendum rests upon the proposition that the Federal Constitution requires ratification by the legislative action of the States through the medium provided at the time of the proposed approval of an amendment. This argument is fallacious in this—ratification by a State of a constitutional amendment is not an act of legislation within the proper sense of the word. It is but the expression of the assent of the State to a proposed amendment.

At an early day this court settled that the submission of a constitutional amendment did not require the action of the President. The question arose over the adoption of the Eleventh Amendment. *Hollingsworth* v. *Virginia,* 3 Dall. 378. In that case it was contended that the amendment had not been proposed in the manner provided in the Constitution as an inspection of the original roll showed that it had never been submitted to the President for his approval in accordance with Article I, § 7, of the Constitution. The Attorney General answered that the case of amendments is a substantive act, unconnected with the ordinary business of legislation, and not within the policy or terms of the Constitution investing

the President with a qualified negative on the acts and resolutions of Congress. In a foot-note to this argument of the Attorney General, Justice Chase said: "There can, surely, be no necessity to answer that argument. The negative of the president applies only to the ordinary cases of legislation: He has nothing to do with the proposition or adoption of amendments to the constitution." The court by a unanimous judgment held that the amendment was constitutionally adopted.

It is true that the power to legislate in the enactment of the laws of a State is derived from the people of the State. But the power to ratify a proposed amendment to the Federal Constitution has its source in the Federal Constitution. The act of ratification by the State derives its authority from the Federal Constitution to which the State and its people have alike assented.

This view of the provision for amendment is confirmed in the history of its adoption found in 2 Watson on the Constitution, 1301 et seq. Any other view might lead to endless confusion in the manner of ratification of federal amendments. The choice of means of ratification was wisely withheld from conflicting action in the several States.

But it is said this view runs counter to the decision of this court in Davis v. Hildebrant, 241 U. S. 565. But that case is inapposite. It dealt with Article I, § 4, of the Constitution, which provides that the times, places and manners of holding elections for Senators and Representatives in each State shall be determined by the respective legislatures thereof, but that Congress may at any time make or alter such regulations, except as to the place for choosing Senators. As shown in the opinion in that case, Congress had itself recognized the referendum as part of the legislative authority of the State for the purpose stated. It was held, affirming the judgment of the Supreme Court of Ohio, that the referendum provision of the state constitution when applied to a law redistricting the State with a

view to representation in Congress was not unconstitu-tional. Article I, § 4, plainly gives authority to the State to legislate within the limitations therein named. Such legislative action is entirely different from the require-ment of the Constitution as to the expression of assent or dissent to a proposed amendment to the Constitution. In such expression no legislative action is authorized or required.

It follows that the court erred in holding that the State had authority to require the submission of the ratification to a referendum under the state constitution, and its judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*