**SAUDER, Plaintiff, v. AKRON (City) et, Defendants.**

Common Pleas Court, Summit County.

No. 177408.   Decided September 19, 1950.

Clyde F. Berry, William J. Laub, Akron, for plaintiff.
Roy Browne, Law Director, Akron, for City and Clerk.
Alva Russell, Prosecutor, William A. Spencer, Asst. Prosecutor, Akron, for Board of Elections.

### OPINION

By WATTERS, J.

This is an action for permanent injunction whereby the plaintiff, a taxpayer, who made demand on the Law Director to bring this action, and was refused, seeks to enjoin a referendum vote by the electors of the City of Akron upon a resolution passed by the Akron City Council on July 5, 1950, and known as Resolution No. 500-1950. and approved

by the Mayor, in which it was declared in substance that there no longer exists such a shortage in rental housing accommodations as to require rent control in the City of Akron, and declaring no further need for Federal rent control within the city.

In simple words, if the injunction is granted finally, the electors of Akron will not be given the right to approve or disapprove the action of Council, at the November general election. But if the injunction is finally refused, the electors will have the opportunity to vote their approval or disapproval of the action of Council by referendum.

That is the only issue. **The court is not called upon to decide the merits or demerits of rent control in Akron. Nor can the court decide whether rent control should be continued or abandoned.** That issue will be up to the electors if allowed to vote on the question.

By an act of Congress known as the "Housing and Rent Act" of 1950, passed in June and effective July 1, 1950, it was provided in substance that the Housing Expediter shall terminate rent control in any incorporated city, town or village upon receipt of a **resolution of its governing** body adopted for that purpose **in accordance with applicable local law** and based upon a finding by such governing body reached after a public hearing, that there no longer exists such a shortage in rental housing accommodations as to require rent control in such city, town or village.

Formerly it was provided that the governor of the state had also to approve, but this requirement was omitted from the present act of Congress.

In pursuance to this act of Congress, on July 5, 1950, the City Council of Akron passed Resolution No. 500-1950, the substance of which has been referred to earlier herein, and which the court will not reproduce verbatim. The mayor approved it.

This resolution was **not** passed as an emergency measure as is obvious from the resolution.

Thereafter, on the 4th of August, 1950, there was filed with the defendant Butler, clerk of the Akron City Council, a petition asking and ordering that said resolution be submitted to the electors of said city for their approval or rejection.

The clerk, upon direction and resolution of council, passed July 25, 1950, checked said petition as to its sufficiency, and the clerk finding the petition to be sufficient, on the 14th day of August, 1950, submitted said petition to the council of said City of Akron, with his certificate that said petition

was sufficient and complied in all respects with the provisions of the charter of the City of Akron.

The next step was the order of Council that said Resolution No. 500-1950 be submitted to the qualified electors of said City for their approval or rejection. There being no temporary injunction it is the court's understanding that all the necessary steps have been followed with the exception that the Board of Elections has not as yet caused the ballots to be printed.

In 1912 the people of Ohio adopted an amendment to the Constitution providing for the power of Initiative and Referendum in the State and in each Municipality. Article II, Section 1, 1a to 1g inclusive.

**Section 1f provides:**

"**Municipal Questions.** The initiative and referendum powers are hereby **reserved to the people of each municipality** on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law." (Emphasis by this court.)

To carry this provision into effect the Legislature passed §§4227-1 to 4227-13 GC inclusive to cover the subject of initiative and referendum in Municipalities.

However §4227-12 GC provides as follows:

"The provisions of §§4227-1 to 4227-13 GC inclusive **shall not apply to any municipality that has or may hereafter adopt its own charter which contains an initiative and referendum provision for its own ordinances and other legislative measures.**" (Emphasis by this court.)

The people of the City of Akron, in November, 1918, adopted a charter form of government effective as of January 1, 1920, and are now operating under it. Said charter specifically provides for the initiative and referendum in Sections 17 to 26 inclusive. Therefore §§4227-1 to 13 GC (inclusive) should not apply generally, but may be looked to where the charter might not be specific.

See **Dillon v. City of Cleveland, 117 Oh St, 258.**

To the contrary though see **James v. Ketterer, 125 Oh St, 165,** where the court held that as the Columbus charter on initiative and referendum had failed to make "resolutions" subject thereto, the court could not look to the general statutes on initiative and referendum, as to municipalities, to supply the defect. (See bottom page 170)

In any event it is interesting to examine §4227-2 GC, which provides in part as follows:

"**Sec. 4227-2 GC.** Ordinances and measures subject to referendum.—**Any ordinance or other measure passed by the council of any municipal corporation shall be subject to the referendum except as hereinafter provided.** * * *." (Emphasis by this court.)

The exceptions are not important in our case.

The applicable charter provisions pleaded in the answer of the clerk and City and admitted by plaintiff's demurrer to the answer, are as follows. (Where emphasis appears, it is done by this court.)

"Section 34. **The Council shall act only by ordinance or resolution.**"

"Section 20. **Any ordinance or resolution passed by Council shall be subject to referendum** except as hereinafter provided. Whenever the Council is by law required to pass more than one ordinance or resolution to complete the legislation necessary to make and pay for any public improvement, the provisions of Section 17 to 26, inclusive, in this Charter shall apply only to the first ordinance or resolution required to be passed and not to any subsequent ordinances or resolutions relating thereto. Ordinances or resolutions providing for appropriations for the current expenses of the city, or for street improvements petitioned for by the owners of the majority of the feet front of the property benefited and to be specially assessed for the cost thereof, and emergency ordinances or resolutions necessary for the immediate preservation of the public peace, health or safety shall go into immediate effect, or at the time stated in the ordinance. Such emergency ordinances or resolutions must, upon a Yea and Nay vote, receive the vote of two-thirds of all the members elected to the Council, and the reasons for such necessity shall be set forth in one section of the ordinance or resolution. If, when submitted to a vote of the electors, an emergency measure be not approved by a majority of those voting thereon, it shall be considered repealed as regards any further action thereunder, and all rights and privileges conferred by it shall be null and void; provided, however, that such measure so repealed shall be deemed sufficient authority for any payment made or expense incurred in accordance with the measure previous to the

referendum vote thereon. The provisions of Sections 17 to 26, inclusive, of this Charter shall apply to pending legislation provided for any public improvement."

"Section 25. Referendum not to apply. The following ordinances and measures shall not be subject to the referendum but shall go into effect either immediately or at the time indicated therein, as council may determine:

"(a) Annual appropriation ordinances. (b) Ordinances or resolutions providing for the approval or disapproval of appointments or removals and appointments or removals made by council. (c) Actions by council on the approval of official bonds. (d) Ordinances or resolutions providing for the submission of any proposition to the vote of the electors. (e) Ordinances providing for street improvements petitioned for by owners of a majority of the feet front of the property benefited and to be specially assessed for the cost thereof."

"Section 19. Referendum, How Ordered and When Held. When a petition signed by ten per centum of the electors of the city shall have been filed with the Clerk of Council within thirty days after an ordinance or resolution shall have been passed by the Council, ordering that such ordinance or resolution be submitted to the electors of the city for their approval or rejection, and said petition is found to be sufficient by the Clerk of the Council, as hereinafter provided, the election officer, officers or board having control of elections in the city shall cause such ordinance or resolution to be submitted to the electors of the city for their approval or rejection at the next succeeding regular or general election in any year occurring subsequent to thirty days after the Clerk of the Council finds such petition or amended petition to be sufficient as hereinafter provided; provided, however, that such ordinance or resolution may be submitted to the qualified electors of the city at a special election instead of a regular or general election, provided that thirty days' notice is given by the Council and such election is regularly called by the Council in the manner provided by law. No such ordinance shall go into effect until and unless approved by the majority of those voting upon the same. Nothing in this article shall prevent the city, after the passage of any ordinance or resolution, from proceeding at once to give any notice or make any publication required by such ordinance or resolution."

"Section 21. The petition—Requirements, Construction and Effect of Election. Any initiative or referendum petition may be presented in separate parts, but each part shall contain a full and correct copy of the title and text of the ordinance or resolution proposed or sought to be referred. Each signer of an initiative or referendum petition shall sign his name in ink or indelible pencil. Each signer of an intiative or referendum petition must be an elector of the city. With each signature shall be stated the place of residence of the signer, giving the street and number and ward and precinct. Each part of such petition shall contain the affidavit of the person soliciting the signatures to the same, which affidavit shall contain a statement of the number of signers of such part of such petition, and shall state that, to the best of his knowledge and belief, each of the signatures contained on such part is the genuine signature of the person whose name it purports to be, and believes that such persons are electors of the city, and that they signed such petition with the knowledge of the contents thereof. The petitions and signatures upon such petitions shall be prima facie presumed to be in all respects sufficient. No ordinance or resolution submitted to the electors of the City, and receiving an affirmative majority of the votes cast thereon, shall be held ineffective or void on account of the insufficiency of the petitions by which such submission of the same shall have been procured; nor shall the rejection by a majority of the votes cast thereon of any ordinance or resolution submitted to the electors of the City be held invalid for such insufficiency. The basis upon which the required number of petitioners in any case shall be determined shall be the total number of votes cast for the office of mayor at the last preceding election therefor."

"Section 22. Duties of Clerk of Council. Within ten days after the filing of any initiative or referendum petition the clerk of the council shall determine the sufficiency of such petition and attach thereto a certificate showing the result of his examination. If the clerk shall certify that the petition is insufficient he shall set forth in the certificate the particulars in which the petition is defective and shall return a copy of the certificate to the person designated in such petition to receive it. Such initiative or referendum petition may be amended at any time within twenty days after the making of a certificate of insufficiency by the clerk, by filing a supplementary petition. Within ten days after such petition is amended by filing a supplementary petition, the

clerk shall make like examination of the amended petition, and, if his certificate shall show the same to be still insufficient, he shall return it to the person designated in such petition to receive it without prejudice, however, to the filing of a new petition. If the clerk of the council shall determine that the petition or amended petition is sufficient, he shall at once submit the same with his certificate to the Council. The Council shall thereupon order that the ordinance or resolution proposed or sought to be referred be submitted to the qualified electors of the city for their approval or rejection at an election to be held as here prescribed. The clerk of council shall forthwith transmit a duly certified copy of such order to the deputy state supervisors of elections of Summit County, Ohio, or their successors. The election authorities shall cause publication of notice and all arrangements to be made for holding such election, and the same shall be conducted and the result thereof returned and declared in all respects as are the results of general municipal elections."

"Section 23. Initiative and Referendum Ballots. The ballots used when voting upon any measure proposed by initiative petition or referred by referendum petition shall state the title of the ordinance or resolution and shall also contain a statement in clear and concise language descriptive of the substance of such ordinance or resolution, and below such statements the two propositions, 'For the Ordinance' (or Resolution, as the case may be), and 'Against the Ordinance' (or Resolution, as the case may be). Immediately at the left of each proposition there shall be a square in which, by making a cross (X) the voter may vote for or against the proposed measure. If a majority of the electors voting on any such measure shall vote in favor thereof, it shall thereupon become an ordinance or resolution of the city. The statement descriptive of the substance of the ordinance or resolution to be placed on the ballot shall be drawn by the Director of Law and by him furnished to the election authorities having charge of the printing of the ballots."

In **State ex rel. v. Otis, 98 Oh St, 83,** at page 94, we find this statement:

"It is true, however, that where the language of a charter is plain, clear and unambiguous, it must be given its usual and ordinary meaning, and if such construction is not in accord with the intent and purpose of the electors, **the remedy is by amendment to the charter.**"

In **28 O. Jur., page 81,** we find:

"Interpretation by Conduct."
"The actions and conduct of the people of a municipality, operating under a Home Rule charter, may be given consideration in the interpretation of the provisions of the charter."

In the Akron charter it is plain, clear and unambiguous that **any resolution** or **ordinance** is subject to referendum with a few specific exceptions. Also a large group of electors, the council, and the mayor, acting for the people, without doubt have assumed this resolution is subject to referendum, and have taken steps to provide for a referendum.

The action of the council in the passing of the resolution was approved in the usual way by the mayor. The resolution is clearly within Section 20 of the charter which provides in part that—"**Any** ordinance or resolution passed by council **shall be subject to referendum.**" The exceptions noted in the charter are not important here. The pertinent part of the Federal Rent Control Act already quoted in substance herein recognized the local law (the charter) when it provided "upon receipt of a resolution of its governing body adopted for that purpose **in accordance with applicable local law.**" The federal law also recognized the initiative and referendum in local jurisdictions in Section 204, Section (4) f (1) (A) which provides in substance that rent control in the area may be retained by popular local referendum declaring it essential.

In the court's opinion council in the passage of the resolution (or resolutions) involved here were acting in a legislative capacity. It is true the legislation was founded upon certain findings of fact, but that could be said of practically all resolutions and ordinances.

Under Section (34) of the charter "**the council can act only by ordinance or resolution.**"

Congress has delegated to each locality the decision as to whether rent control should be retained. Congress in effect has said that we think rent control generally is needed still, but each local jurisdiction, under its applicable local law, can decide that for itself.

And even if it be held that council's action in passing the resolution was not a legislative act, under the city charter the people should not be denied the right of referendum thereon.

"The power of initiative and referendum may be conferred by the sovereignty upon a municipality with respect to any matter, legislative or administrative, within the realm of local affairs; and often the power, as conferred, is extensive, including all ordinances and resolutions and practically all actions that might be taken by a municipal council."

McQuillin on Municipal Corporations, Vol. 5 (3rd Edition) page 251.

Counsel for plaintiff cite Hawke v. Smith, 253 U. S. 221 and 231, where the United States Supreme Court held that there could be no referendum in Ohio to the action of the Ohio Legislature in adopting the Amendments to the United States Constitution as to Prohibition and Women Suffrage, which decision reversed all the Ohio courts which had held that a referendum could be had to the Ohio Legislature's adoption of these amendments.

There the United States Supreme Court was dealing with the specific Article V of the Federal Constitution, which it held exclusively provides for the manner in which amendments to the United States Constitution should be adopted. The court cited authority also to the effect that the submission of an amendment by Congress did not even require any action by the President. The court held that the action of the Ohio State Legislature was not a legislative act and held that any other view would lead to endless confusion in the manner of ratification of Federal amendments.

The situation there was not at all analogous. Congress in our case has **specifically delegated the question of rent control to the local governing body for its action in accord**ance with applicable local law,—in our case the local Home Rule City charter.

The Congress knew it was a highly controversial subject and wanted to give each locality the right to pass on it, and according to its own applicable local law.

Attention is called to the following Ohio decisions:

The **State ex rel v. City Commission, etc., 140 Oh St 368.**

(1) syllabus. "The provisions of the state Constitution authorizing and providing the manner of submission of municipal ordinances to a referendum vote should be so construed as to permit rather than preclude the exercise of the right conferred. The object clearly sought to be obtained

by such provisions should be promoted rather than prevented or obstructed."

The same applies as forcefully to the City Charter adopted by the people of Akron.
See **State ex rel Snyder v. Board of Elections, 78 Oh Ap, 194.**

Syllabus (2) "Provisions of a city charter which provide for a referendum on all ordinances, including one levying a tax passed as an emergency measure, do not violate **Section 1-d of Article II of the Constitution of Ohio.**"

This section of the Constitution provides that certain emergency laws are not subject to referendum. But the charter prevailed.

This matter comes before the court upon demurrer of the plaintiff to the second defense of the defendants, the City of Akron and Claude Butler, Clerk of Council of said city. The second defense incorporates the first defense of said defendants which admits everything alleged in the petition except that in the first defense defendants deny plaintiff's allegation that the matter is not subject to referendum, and denies plaintiff's claim that he has no adequate remedy at law.

In other words, from the pleadings the facts are not in dispute, and the matter becomes solely a question of law. The facts admitted by the demurrer to the answer of said defendants are a complete defense in law, and the court overrules plaintiff's demurrer, with exceptions.

Counsel will prepare journal entry accordingly.

The other defendants, the members of the Board of Elections of Summit County, are nominal but necessary parties to the action. In their official capacity they will proceed to carry out their duties in relation to placing the matter upon the ballot according to law unless prevented by further order of court. Said defendants have answered, and said answer, I presume for the sake of brevity, is simply a general denial.

Needless to say this matter is a very controversial question. This court has given its judgment according to the law as the court interprets it. If the court is in error there will be ample opportunity to correct it. The court will cooperate fully with the attorneys to expedite a review of this decision.