**Ray L. WALKER et al.**

v.

**Winfield DUNN et al.**

Supreme Court of Tennessee.

Sept. 5, 1972.

Philip M. Carden, Nashville, for complainants-appellants.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, for defendants-appellees.

## OPINION

McCANLESS, Justice.

The complainants seek a judgment declaring that the actions of the General Assembly and the Governor in ratifying the twenty-sixth Amendment to the Constitution of the United States to have been *ultra vires* and void *ab initio*.

On March 22, 1971, when the General Assembly was in recess during its regular 1971 session the Governor was informed that the Congress of the United States was expected to complete action the following day to submit to the legislatures of the several states a proposed new Amendment to the Constitution of the United States. This Amendment would, if ratified by a sufficient number of state legislatures, extend the elective franchise to persons eighteen years of age in both federal and state elections.

On March 23, 1971, a group of persons, including certain defendants, who were members of the General Assembly, circulated petitions among the membership seeking the call of an extraordinary session by the speakers of the two houses pursuant to Article II, § 8, of the Constitution of Tennessee. The purpose of the call would be to ratify the proposed Amendment to the Federal Constitution; the effort was successful and the speakers called the extraordinary session. The General Assembly thereupon adopted a joint resolution ratifying the Amendment and the Governor thereafter signed the resolution.

Complainants allege that these actions were *ultra vires* and void because they were in violation of Article II, § 32, of the Tennessee Constitution, which provides as follows:

"No Convention or General Assembly of this State shall act upon any amendment of the Constitution of the United States proposed by Congress to the several States; unless such Convention or General Assembly shall have been elected after such amendment is submitted."

Defendants moved to dismiss the complaint pursuant to Rule 12.02 of the Rules of Civil Procedure contending: (1) the question is moot and thus non-justiciable; (2) the court lacks jurisdiction to review a legislative function; (3) the complainants lack standing to sue because they have not alleged special injury or real interest in the suit beyond that of members of the public generally.

The Chancellor at first heard the cause on the defendants' motion to dismiss the complaint, which he overruled. Thereafter the defendants answered but later withdrew their answer and filed their petition to rehear the issues presented by the motion to dismiss. The Chancellor granted the petition to rehear and, treating the motion to dismiss as a motion for summary judgment, filed a memorandum opinion which was the basis of a decree dismissing the complaint. The opinion assigned the following grounds for dismissing the bill:

"(1) that the matters set out in the complaint had not become moot; (2) that the alleged actions of the defendants were subject to judicial review; (3) that the complainants had standing to bring the suit; (4) that the General Assembly was not controlled by Article II, § 32, of the Constitution of Tennessee in considering the proposed Twenty-Sixth Amendment to the Constitution of the United States; and (5) that the special

session at which the proposed amendment was ratified was validly convened pursuant to Article II, § 8, of the Constitution of Tennessee."

The plaintiffs have appealed and have assigned error.

(1) As to the question of mootness, the defendants insist that the issue has been rendered moot and non-justiciable because thirty-eight other states have ratified the amendment.

The Chancellor assumed the validity of the defendants' contention but cited a recognized exception:

"So it has been held that the courts will, when exercising the authority conferred by the declaratory judgment statute, consider a question though it has become moot, where it involves a matter of great public interest." 1 Anderson, Actions for Declaratory Judgments, § 63 at 126–127, (2nd Ed. 1951).

This exception, as the Chancellor observed, has been recognized by the Supreme Court of Tennessee:

"While the rule that this Court will not decide a moot question is applicable when the question for determination affects only the rights and claims personal to the parties, an exception is well recognized when interest of a public character and of importance in the administration of justice generally are involved. McCanless v. Klein, 182 Tenn. 631, 188 S.W.2d 745 (1945). Because the question involves a determination of public rights or interests under conditions which may be repeated in the future, we will consider the question." New Rivieria Arts Theatre v. State, 219 Tenn. 652, 658, 412 S.W.2d 890 (1967).

■ The Chancellor therefore held that the question "involves a determination of public rights or interests under conditions which may be repeated in the future . . ." We agree with this holding as it applies to the issues of this case.

(2) The defendants contend that the courts have no jurisdiction over a purely legislative function and cite as authority, Clements v. Roberts, 144 Tenn. 129, 230 S. W. 30 (1920). That case is distinguishable from the one at bar. In the *Clements* case the plaintiffs sought an injunction to prevent the Governor, the Secretary of State, the Speaker of the Senate, and the Speaker of the House from taking steps to certify the ratification of the Nineteenth Amendment to the Constitution of the United States. The distinction is that in this case the court was asked to intervene in and interfere with the process of ratification. In quashing the injunction that the Chancery Court had issued the Supreme Court did · not say that once performance was complete a court could not review the constitutionality of the legislature's act. In fact, the Court acknowledged that:

"After the passage of said resolution, and after it was certified to the Secretary of State of the United States, and by him duly promulgated, then a right of action would have laid in favor of complainants, but not until then."

■ We are not here asked to interfere with a co-ordinate branch of government in the performance of a public function, but rather judicially to review acts that have already been performed by the legislative branch of the State government.

■ (3) The defendants argue that the complaint must fail because the plaintiffs have not alleged special injury or real interest in the issues in the suit beyond that of members of the public generally. The complainants assert injury based on the defendants' deprivation of complainants' right "indirectly" to vote on the ratification through their vote for their legislators; further, that the General Assembly's action denies to them liberty without due process of law, and the equal protection of the law in violation of Article I, § 8, of the Tennessee Constitution, and the Fourteenth Amendment of the United States

Constitution. We are of opinion that these averments are sufficient to satisfy the requirement of special injury or real interest in the suit.

(4) Plaintiffs assigned as error the holding of the Chancellor that the General Assembly was not controlled by Article II, § 32, of the Constitution of Tennessee in considering the proposed Twenty-sixth Amendment to the Constitution of the United States. This is a determinative issue of this case. The Chancellor based his holding on an assumption that in the absence of congressional action the states can regulate the amending process under Article 5 of the Constitution of the United States, subject to the restrictions of the Supremacy Clause.

The reasoning thus becomes: (1) that the states have the power to regulate the ratification process by the adoption of legislation providing for the procedures and machinery used to effect the ratification; (2) that such legislative provisions are valid unless they conflict with the mandates of Article 5, of the Constitution of the United States; therefore, if the state provisions do conflict with Article 5, they are invalid and need not be complied with; conversely, if no conflict exists, the provisions are valid and must be met. The issues for our determination are: what constitutes a "conflict" with Article 5; and whether Article II, § 32, of our State Constitution constitutes such a conflict as to render it inoperative.

Two cases are in point. In Hawke v. Smith, 253 U.S. 221, 40 S.Ct. 495, 64 L.Ed. 871 (1920), the court was faced with determining whether a provision in the Ohio Constitution, providing for a referendum vote on the ratification of a proposed amendment to the United States Constitution, conflicted with Article 5, of the Constitution of the United States. After stating the provisions of Article 5, the court said:

"The 5th article is a grant of authority by the people to Congress. The determination of the method of ratification is the exercise of a national power specifically granted by the Constitution; that power is conferred upon Congress, and is limited to two methods: by action of the Legislatures of three fourths of the states, or conventions in a like number of states. . . . The framers of the Constitution might have adopted a different method. Ratification might have been left to a vote of the people, or to some authority of government other than that selected. The language of the article is plain, and admits of no doubt in its interpretation. It is not the function of courts or legislative bodies, national or state, to alter the method which the Constitution has fixed."

The court then decided that the term "legislature" in the context of Article 5, did not include a referendum vote; therefore, that the Ohio provision was in conflict with Article 5 and inapplicable.

In Leser v. Garnett, 258 U.S. 130, 42 S. Ct. 217, 66 L.Ed. 505 (1922), a case decided a year after the *Hawke* case, the Supreme Court of the United States again dealt with a state constitutional provision affecting the ratification of a federal constitutional amendment. The court said:

"The argument is that by reason of these specific provisions, the Legislatures were without power to ratify. But the function of a state Legislature in ratifying a proposed Amendment to the Federal Constitution, like the function of Congress in proposing the Amendment, is a federal function, derived from the Federal Constitution; and it transcends any limitations sought to be imposed by the people of a state."

The principles enunciated in the *Hawke* and *Leser* cases were considered by the Supreme Court of Missouri in State ex rel.

Tate v. Sevier, 333 Mo. 662, 62 S.W.2d 895 (1933).

"By the adoption of Article V of the Federal Constitution the people divested themselves of all authority to either propose or ratify amendments to the Constitution. By the same article they vested the power to propose amendments in the Congress and in a convention called by Congress, and designated the state Legislatures and state conventions as representatives of the people, with authority to ratify or reject proposed amendments to the Constitution. When a state Legislature performs any act looking to the ratification or rejection of an amendment to the Federal Constitution, it is not acting in accordance with any power given to it by the State Constitution, but is exercising a power conferred upon it by the Federal Constitution."

■ Under the authority of these decisions we decide that Article II, § 32, of the Tennessee Constitution is a limitation upon the General Assembly of Tennessee in the exercise of its federally derived power. Thus, the General Assembly cannot be controlled by the provisions of Article II, § 32.

(5) The final issue for determination is whether Article II, § 8, of the Constitution of Tennessee forbids the re-convening of the General Assembly from a recess occurring during its regular session. The Section is, as follows:

"Sec. 8. *Legislative sessions—Governor's inauguration.*—The General Assembly shall meet in organizational session on the first Tuesday in January next succeeding the election of the members of the House of Representatives, at which session, if in order, the Governor shall be inaugurated, and it shall remain in session for not longer than fifteen consecutive calendar days during which session no legislation shall be passed on third and final reading. Thereafter, the General Assembly shall meet on the fourth Tuesday in February next, and may by joint resolution recess or adjourn until such time or times as it shall determine. It shall be convened at other times by the Governor as provided in Article III, Section 9, or by the presiding officers of both Houses at the written request of two-thirds of the members of each House. [As amended; Adopted in Convention December 10, 1965; approved at election November 8, 1966; Proclaimed by Governor, December 2, 1966.]"

■ The language of the Section does not suggest that the phrase "at other times" means exclusively times when the General Assembly is not in session, although the phrase includes times when it is not in session. Thus, the reconvening of the General Assembly after a recess or adjournment pursuant to Section 8 is comprehended by the phrase "at other times". The reconvening of the General Assembly in this case, therefore, was in compliance with the requirements of Article II, § 8, of our Constitution.

We consider that the action of the General Assembly in ratifying the amendment was lawful. We therefore affirm the decree of the Chancery Court and dismiss the plaintiffs' appeal at their cost.

DYER, C. J., CHATTIN, J., and JENKINS, Special Justice, concur.