EQUAL RIGHTS AMENDMENT — CONTINUOUS VITALITY
The Senate of the Thirty-fourth Legislature must act upon the proposed Equal Rights Amendment to the Federal Constitution because even though said amendment was ratified by the Senate of the Thirty-third Legislature, it was not passed by the Thirty third Legislature as a whole, and the actions of the Senate alone in the Thirty-third Legislature did not have continuous vitality so that their actions have no effect upon the present Senate. The Attorney General is in receipt of your letter in which you in effect ask the following question: "Since the Senate of the Thirty-Third Legislature ratified SCR 110, which is referred to as the Equal Rights Amendment, and the House of Representatives did not, does the recently elected Senate of the Thirty-fourth Legislature have to ratify the amendment anew if the present membership of the House of Representatives does in fact ratify the amendment?" Article IV of the United States Constitution provides as follows: "The Congress, whenever two-thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or on the application of the legislatures of two-thirds of the several states, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three-fourths of the several states, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the Congress; provided that no amendment which may be made prior to the Year One Thousand eight hundred-and eight shall in any manner effect the First and Fourth Clauses in the Ninth Section of the first Article; and that no state, without its consent, shall be deprived of its equal Suffrage in the Senate." (Emphasis added) In response to your inquiry the initial area of determination must of necessity attempt to define the word "legislature". Article V, Section 1 of the Oklahoma State Constitution provides in part as follows: "The legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives . . ." The terminology employed in this statute clearly indicates that the legislative authority in the State of Oklahoma is vested in a bicameral body consisting of a Senate and a House of Representatives. The Equal Rights Amendment submitted by the United States Congress to the Oklahoma State Legislature for ratification was ratified by the Senate as a concurrent resolution. Article V, Section 34 of the Oklahoma Constitution provides in part as follows: ". . . No law shall be passed unless upon a vote of a majority of all the members elected to each House in favor of such law . . ." This constitutional provision sets forth the procedure which the Legislature must follow in enacting any bill or resolution before such bill or resolution can be considered to have been passed. If the procedure is not adhered to, i.e., if only one House of the Legislature passes a bill or resolution and the other does not, then the bill or resolution is considered to have failed passage until such time as the same Legislature, by action in each House, does affirmatively pass the measure. The question has arisen as to the status of a bill or resolution which is pending upon adjournment of the first session of a legislative biennium. In Attorney General Opinion No. 67-206, submitted on March 15, 1967, the Attorney General advised that bills pending at the adjournment of the first legislative session would be carried over to the second legislative session of the biennium and would retain the status of progress they had attained at the end of the first session. The reasoning behind this opinion was that the same legislative body met in both sessions, and since it was the same body its actions had continuous vitality within the biennium. It is evident that this continuous vitality did not extend beyond the legislative biennium, so that if a measure had failed to be passed by a majority vote in each House voting in either the first or second session, the measure is considered not to have passed. The Senate of the Thirty-third Legislature ratified the Equal Rights Amendment, but the House of Representatives of the Thirty-third Legislature did not ratify the amendment before the Thirty-third Legislature terminated. The action of the Senate in the Thirty-third Legislature had continuous vitality from the first session to the second session, but this vitality, as indicated above, did not carry over into the Senate of the Thirty-fourth Legislature. This initial survey of existing state constitutional law indicates that the recently elected Senate of the Thirty-fourth Legislature would have to act upon the proposed federal amendment independent of any action taken by any previous Senate. The remaining area of inquiry revolves around the issue of whether or not ordinary procedural rules of a State Legislature must be followed in ratifying a constitutional amendment, or if these rules may be suspended, since the Legislature, when considering a proposed amendment to the Federal Constitution, is acting in the capacity of a ratifying body rather than a lawmaking body. In Smiley v. Holm,285 U.S. 355, the Supreme Court stated: "The word 'legislature' is used eleven times in the Constitution and five times in its amendments . . . There can be scarcely any doubt that it refers to the bicameral body holding sessions periodically for the purpose principally of enacting laws for the State. . . ." The Court in the Smiley case continued by indicating that the use of the term "legislature" in different relations in the Federal Constitution does not always imply the performance of the same function. In Hawke v. Smith, 253 U.S. 221, the Court said: ". . . Ratification by a state of a constitutional amendment is not an act of legislation within the proper sense of the word. It is but the expression of the assent of the state to a proposed amendment." "In dissent or assent of a proposed amendment to the Federal Constitution no legislative action is authorized or required." Thus, the Court has held in Peter Hand Company v. U.S., 2 F.2d 449
that although the State Constitution required that all proposed amendments be submitted to a referendum vote, such a requirement did not attach to the ratification of a proposed amendment to the Federal Constitution. The Supreme Court has also held that once a proposed amendment to the Federal Constitution has been ratified by a state legislature a subsequent legislature cannot rescind such ratification. (See Coleman v. Miller, 307 U.S. 433). In both the above-mentioned cases the Supreme Court held that certain state procedural rules did not apply to a legislature when it was acting in the capacity of a ratifying body. But, in both of those instances the Court was concerned with the action taken by the legislative body as a whole after it had completed the ratification process Once the process of ratification by a legislative body is completed, its authority and function cease with regard to that particular amendment. In the situation about which you have inquired the ratification process within the Oklahoma Legislature has not been completed, and there is no indication in either State or Federal constitutional or case law which indicates that before the ratification process is completed ordinary procedural rules may be disregarded. In conclusion, the Federal Constitution requires that a proposed constitutional amendment be submitted to the legislatures of the states. In Oklahoma, the Legislature is composed of a bicameral body, and all bills and resolutions presented to this body do not reach fruition unless they are acted upon and passed by a majority vote in each house. If this procedure is not accomplished within the legislative sessions of any legislative biennium, then the measure is considered to have failed. A bill or resolution has continuous vitality only from the first session to the second session, but this vitality is not carried forward into a new legislative biennium if passage was completed by only one house in the previous legislative biennium. It is, therefore, the opinion of the Attorney General that your question be answered in the affirmative. The Senate of the Thirty-fourth Legislature must act upon the proposed Equal Rights Amendment to the Federal Constitution because even though said amendment was ratified by the Senate of the Thirty-third Legislature, it was not passed by the Thirty-third Legislature as a whole, and the actions of the Senate alone in the Thirty-third Legislature did not have continuous vitality so that their actions have no effect upon the present Senate. (Marvin C. Emerson)