[No. A027366. First Dist., Div. One. Jan. 29, 1986.]

CARPENTERS HEALTH AND WELFARE TRUST FUND FOR
CALIFORNIA et al., Plaintiffs and Appellants, v.
PARNAS CORPORATION, Defendant and Respondent.

**COUNSEL**

Blythe Mickelson, Van Bourg, Allen, Weinberg & Roger and Van Bourg, Weinberg, Roger & Rosenfeld for Plaintiffs and Appellants.

Paul M. Loya, Atkinson, Andelson, Loya, Ruud & Romo, James E. MacMaster and Haines & Walker for Defendant and Respondent.

---

## OPINION

**ELKINGTON, J.**—On this appeal by several plaintiffs whom we shall for brevity and convenience characterize as the Funds, from a judgment of dismissal of their action seeking foreclosure of a lien under Civil Code section 3111, following a successful demurrer to their complaint by defendant Parnas Corporation, the only question may reasonably be stated as:

■■■ Is California's provision for an action to enforce the state's Civil Code section 3111 preempted, and thus nullified, by the federal Employee Retirement Income Security Act of 1974, commonly known as ERISA?

We respond negatively to the question and reverse the judgment. Our reasons follow.

The material factual-procedural context of the case is uncontroverted. We relate it.

Parnas Corporation, the owner of a parcel of Santa Clara County real property, had employed a contractor to perform some carpenter work upon it. The contractor was obligated under a collective bargaining agreement to, *but did not,* make specified payments to the Funds for fringe benefits of the individual carpenters employed by him. Such payments, when made, are in effect part of the carpenter's total wage package, which part is credited to him on the books of the Funds. "[T]hese contributions are in substance as much 'justly due' to the employees who have earned them as are the wages payable directly to them in cash." (*United States* v. *Carter* (1957) 353 U.S. 210, 220 [1 L.Ed.2d 776, 784, 77 S.Ct. 793].) Parnas Corporation was not a party to the collective bargaining agreement, nor otherwise directly obligated to the Funds. It simply owned the property on which the defaulting contractor had been employed.

The Funds commenced a state superior court action against Parnas Corporation and its property, to foreclose a lien under Civil Code section 3111, for the sums unpaid by the contractor.

Civil Code section 3111 states: "*For the purposes of this chapter [relating to mechanics' liens generally], an express trust fund established pursuant*

*to a collective bargaining agreement to which payments are required to be made on account of fringe benefits supplemental to a wage agreement for the benefit of a claimant on particular real property shall have a lien on such property in the amount of the supplemental fringe benefit payments owing to it pursuant to the collective bargaining agreement.*"

(It will be seen that § 3111, in respect of unpaid fringe benefit trust funds, places upon the property owner the same obligation he would hold in respect of unpaid workers, subcontractors, and materialmen.)

Parnas Corporation demurred generally to the Funds' complaint, on the ground that the state court jurisdiction of such an action was preempted by federal court jurisdiction, by virtue of "the Employee Retirement Income Security Act of 1974, as amended, (herein called ERISA)."

And, as noted, the superior court agreed, sustaining the demurrer and entering the judgment from which the Funds' appeal was taken to this court.

Our task is the interpretation of an act of Congress, and the determination whether that act has preempted the jurisdiction of California's courts in actions to enforce a lien created by Civil Code section 3111.

"[C]ourts have reached varying conclusions as to the meaning of ERISA's pre-emptive language. . . ." (*Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504, 525, fn. 21 [68 L.Ed.2d 402, 418, 101 S.Ct. 1895].) Ordinarily, in such situations, federal law is decisive, and where lesser federal courts are in disagreement, opinions of the United States Supreme Court will control. (*Kalb* v. *Feuerstein* (1940) 308 U.S. 433, 438-439 [84 L.Ed. 370, 374, 60 S.Ct. 343]; *Hines* v. *Lowrey* (1938) 305 U.S. 85, 91 [83 L.Ed. 56, 60, 59 S.Ct. 31]; *Hawke* v. *Smith No. 1* (1920) 253 U.S. 221, 226 [64 L.Ed. 871, 875, 40 S.Ct. 495, 10 A.L.R. 1504].)

"[O]ur first reference is of course to the literal meaning of words employed." (*Flora* v. *United States* (1958) 357 U.S. 63, 65 [2 L.Ed.2d 1165, 1167, 78 S.Ct. 1079].) And: "It is our judicial function to apply statutes on the basis of what Congress has written." (*U. S.* v. *Great Northern R. Co.* (1952) 343 U.S. 562, 575 [96 L.Ed. 1142, 1151, 72 S.Ct. 985].)

It is desirable at this point to consider certain "definitions" of ERISA, those of "employee organization," "participant," and "beneficiary."

The term "employee organization," as here relevant, means any "group or plan," such as any of the Funds, which exists for the purpose of admin-

istering employee benefit plans. The term "participant" includes a member, or trustee, of an employee benefit plan such as any of the Funds, whose beneficiaries may be eligible to receive any such benefit. And the term "beneficiary" is defined as one who is or may become entitled to a benefit under an employee benefit plan. (ERISA, § 3 [29 U.S.C. § 1002], subds. (4), (7) and (8).)[1]

As relevant to the issues before us, ERISA may be said to be bipartite.

Much of the statute is given over to the mandated "terms and conditions" of employee benefit plans. That part deals with "concepts of vested rights and nonforfeitable rights [such as] are critical to the ERISA scheme." (*Alessi* v. *Raybestos-Manhattan, Inc., supra,* 451 U.S. 504, 510 [68 L.Ed.2d 402, 409].) It relates to assurance that such plans meet certain minimum requirements of "vesting," "funding," "recordkeeping," "prohibited transactions," "trustee responsibility" and "information to beneficiaries."

*Elsewhere* the statute deals with "*civil enforcement,*" and its authorization "to bring civil action" (ERISA, § 502 [29 U.S.C. § 1132]) to *enforce* a trustee's "rights under the terms of the plan." (*Idem.,* subd. (a)(1)(B).)

Looking to the "words employed" by ERISA, we first note its requirement that, ". . . the provisions . . . of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." (ERISA § 514 [29 U.S.C. § 1144], subd. (a).)[2] Then

---

[1]The full texts of subdivisions (4), (7) and (8) follow: "(4) The term 'employee organization' means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationship; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan. . . .

"(7) The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

"(8) The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."

[2]The full text of subdivision (a) states: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975." (Its exceptions are not here applicable.)

the same section of the statute recites that "[t]he term 'State' includes a State . . . which purports to regulate, directly or indirectly, the *terms and conditions* [our italics] of employee benefit plans." (ERISA § 514 [29 U.S.C. § 1144] subd. (c)(2).)[3] And: "Of course, § 514(a) pre-empts state laws only insofar as they relate to *plans* covered by ERISA." (Our italics; *Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 97, fn. 17 [77 L.Ed.2d 490, 501, 103 S.Ct. 2890].)

It thus appears that ERISA's preemption of "State law" is only of such laws as regulate the *"terms and conditions"* of employer benefit plans.

We look now to ERISA's provisions on *"civil enforcement,"* i.e., its section 502 (29 U.S.C. § 1132). It reads (italics ours):

"(a) A civil action may be brought—(1) by a *participant* or beneficiary— . . ., (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . . (e)(1) . . . *State courts of competent jurisdiction* and district courts of the United States *shall have a concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.*" (ERISA § 502 [29 U.S.C. § 1132], subds. (a)(1)(B) and (e)(1).)[4]

It will thus be seen that while ERISA *does preempt* any state interference, directly or indirectly, in respect of the "terms and conditions" of employee benefit plans; it *does not preempt* state lawsuits such as here brought by the Funds, to *"enforce"* such "terms and conditions," and thus recover delinquent ERISA contributions.

And, our inquiry has led us to the case of *Johnson* v. *Transworld Airlines, Inc.* (1983) 149 Cal.App.3d 518, 530 [196 Cal.Rptr. 896], holding: "Under [U.S.C.] section 1132(e)(1), states have concurrent jurisdiction over civil actions . . . if the actions are brought under section 1132(a)(1)(B). Section

---

[3]The full text of subdivision (c)(2) provides: "The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."

[4]The full text of subdivision (e)(1) states: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

1132(a)(1)(B) permits a civil action to be brought by a participant of an employee benefit plan to 'recover *benefits due* . . . under the terms of his plan, *to enforce his rights* under the terms of the plan, or *to clarify his rights to future benefits* under the terms of the plan.'" (Italics in original.)

Parnas Corporation's briefs may also be interpreted as contending, assuming arguendo that the courts of the several states are authorized to *enforce* payments due parties such as the Funds, they must nevertheless do so under *federal law*. It points out that federal law has no provision such as Civil Code section 3111. And it argues that California's courts therefore have no *jurisdiction* to proceed under section 3111.

We are unpersuaded. We find nothing in ERISA, or authority proffered by Parnas Corporation, in aid of the contention.

"The test of whether both *federal and state regulations* may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives." (*Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 142 [10 L.Ed.2d 248, 256-257, 83 S.Ct. 1210].) We note also that ERISA is founded upon the federal Constitution's commerce clause (art. I, § 8, cl. 3). It has long been the rule that, at least in the absence of clear words of preemption by Congress, one challenging a *state statute* must show "that in their practical operation its provisions directly burden or destroy interstate commerce." (*Foster Packing Co.* v. *Haydel* (1928) 278 U.S. 1, 10 [73 L.Ed. 147, 153, 49 S.Ct. 1]; and see *Labor Board* v. *Fainblatt* (1939) 306 U.S. 601, 605 [83 L.Ed. 1014, 1017-1018, 59 S.Ct. 668]; *Natural Gas Co.* v. *Slattery* (1937) 302 U.S. 300, 307 [82 L.Ed. 276, 279-280, 58 S.Ct. 199]; *Furst* v. *Brewster* (1931) 282 U.S. 493, 498 [75 L.Ed. 478, 481, 51 S.Ct. 295]; *Sherlock et al.* v. *Alling, Administrator* (1876) 93 U.S. 99, 104 [23 L.Ed. 819, 820].) And in the enactment of ERISA, the congressional intent was "to provide the full range of *legal and equitable [enforcement] remedies available in both the state and federal courts.*" (*Laborers Fringe, etc.* v. *Northwest Concrete, etc.* (6th Cir. 1981) 640 F.2d 1350, 1352.) California's Civil Code section 3111 imposes no burden upon interstate commerce or ERISA. Instead it aids in the enforcement of ERISA.

Moreover, the several cases otherwise relied upon by Parnas Corporation render it scant aid on the appeal. None of them considers the effect of

ERISA's section 502 (29 U.S.C. § 1132), subdivisions (a)(1)(B) and (e)(1), placing concurrent jurisdiction in state courts to recover delinquent ERISA contributions. "In the federal system no less than in California, cases are not authority for propositions not considered." (*People* v. *Burnick* (1975) 14 Cal.3d 306, 317 [121 Cal.Rptr. 488, 535 P.2d 352].)

We note further, that the conclusions we have reached are otherwise consistent with long existent federal law.

■■■ "Although the Supremacy Clause invalidates state laws that '*interfere with, or are contrary to the laws of Congress . . .,*' . . . the ' "exercise of federal supremacy is not lightly to be presumed," ' . . . As we recently reiterated, '[p]reemption of state law by federal statute or regulation is not favored "in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." ' " (*Alessi* v. *Raybestos-Manhattan, Inc., supra,* 451 U.S. 504, 522 [68 L.Ed.2d 402, 416].) "Our primary function is to determine whether, under the circumstances of this particular case [the] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*Hines* v. *Davidowitz* (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 587, 61 S.Ct. 399]). ■■ And the high court has said: "We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule." (*Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502, 507-508 [7 L.Ed.2d 483, 487, 82 S.Ct. 519].)

We end this opinion with an authoritative statement of ERISA's legislative history. "The legislative history underlying section 502 [i.e., ERISA] indicates that Congress intended that the enforcement provisions should have teeth: the provisions should be liberally construed 'to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act.' H.R.Rep.No. 93-533, 93d Cong., 2d Sess. 17, *reprinted in* [1974] U.S.Code Cong. & Ad. News, pp. 4639, 4655. This history further states that '[t]he intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.' " (*Laborers Fringe, etc.* v. *Northwest Concrete, etc., supra,* 640 F.2d 1350, 1352.)

The judgment is reversed.

Racanelli, P. J., and Newsom, J., concurred.