[No. S000772. June 20, 1991.]

CARPENTERS SOUTHERN CALIFORNIA ADMINISTRATIVE
CORPORATION, Plaintiff and Appellant, v.
EL CAPITAN DEVELOPMENT COMPANY, Defendant and
Respondent.

1042

**COUNSEL**

Cox, Castle & Nicholson, Stanton, Kay & Watson, James P. Watson, Charles P. Scully, Donald C. Carroll, DeCarlo & Connor, John T. DeCarlo, Patrick Connor, Richard A. Brownstein and Karen L. Holliday for Plaintiff and Appellant.

Lionel Richman, Pappy & Davis, George A. Pappy, Jett & Laquer, Wayne Jett, Hill, Farrer & Burrill, Stuart H. Young, Jr., McCarthy, Johnson & Miller, Raphael Shannon, Lori A. Nord, Gilbert & Sackman, Steven J. Kaplan, Kenneth J. Sackman, Gerald M. Feder, David R. Levin, Van Bourg, Weinberg, Roger & Rosenfeld, Victor J. Van Bourg, Michael B. Roger, Blythe Mickelson and Michael W. Schnake as Amici Curiae on behalf of Plaintiff and Appellant.

Littler, Mendelson, Fastiff & Tichy, Karen E. Ford, Major Williams, Jr., Dorothy J. Stephens and Gregory R. Meyer for Defendant and Respondent.

Musick, Peeler & Garrett, Lynn K. Thompson and Roberta J. Burnette as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**PANELLI, J.**—The issue presented is whether Civil Code section 3111,[1] which creates liens on real property in favor of trust funds established pursuant to collective bargaining agreements, is preempted by the Employee Retirement Income Security Act of 1974 (ERISA). (29 U.S.C. § 1001 et seq.) We conclude that ERISA does preempt section 3111.

### FACTS

Carpenters Southern California Administrative Corporation (CSCAC) is the administrator and the assignee of rights of various multiemployer trust funds established under collective bargaining agreements, including the Carpenters' Trust Funds. The Carpenters' Trust Funds are employee pension benefit plans or employee welfare benefit plans within the meaning of ERISA. (See 29 U.S.C. § 1002(1), (2)(A), & (21)(A).) CSCAC is a "fiduciary" as defined in ERISA. (29 U.S.C. § 1002(21)(A).)

Collective bargaining agreements often require employers to make contributions to trust funds for the benefit of covered employees. In the present case, the covered employees are members of unions affiliated with the United Brotherhood of Carpenters and Joiners of America (Unions). CSCAC, due to its fiduciary relationship with the Unions and in its role as administrator of the trust, has a duty to collect contributions from employers who fail to make the required payments to the trust.

El Capitan Development Company (El Capitan) developed a condominium project on its property in Bakersfield. The general contractor was Grupe

---

[1] Civil Code section 3111 provides: "For the purposes of this chapter, an express trust fund established pursuant to a collective bargaining agreement to which payments are required to be made on account of fringe benefits supplemental to a wage agreement for the benefit of a claimant on particular real property shall have a lien on such property in the amount of the supplemental fringe benefit payments owing to it pursuant to the collective bargaining agreement."

All further statutory references are to the Civil Code unless otherwise indicated.

Construction (Grupe). Grupe subcontracted with Pacific Southwest Framing for part of the framing work. In its complaint, CSCAC alleges that John Hall Enterprises (John Hall), with which CSCAC made a collective bargaining agreement, and Pacific Southwest Framing are a single entity. John Hall failed to make fringe benefit contributions to the trust funds in excess of $121,000.

Pursuant to section 3111, CSCAC recorded trust fund liens against El Capitan's real property in order to collect the delinquent contributions to the trust funds. CSCAC later sued El Capitan in Kern County Superior Court to foreclose the liens. CSCAC alleged that, because John Hall and Pacific Southwest Framing are a single entity, Pacific Southwest Framing was bound by CSCAC's agreement with John Hall and was therefore obligated to make the contributions to the trust.[2] CSCAC further alleged that because the unpaid contributions were due on account of work performed on El Capitan's property, section 3111 created liens on that property.

El Capitan, which has not signed a collective bargaining agreement with CSCAC, demurred to CSCAC's complaint, arguing that ERISA preempted section 3111. (See 29 U.S.C. § 1144.) The trial court granted El Capitan's demurrer with leave to amend. When CSCAC declined to amend, the court entered a judgment of dismissal.

The Court of Appeal reversed the judgment. We granted El Capitan's petition for review and retransferred the matter to the Court of Appeal for reconsideration in light of *Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41 [95 L.Ed.2d 39, 107 S.Ct. 1549] (hereafter *Pilot Life*). On remand, the Court of Appeal concluded that ERISA preempted section 3111 and affirmed the judgment of dismissal. We affirm.

DISCUSSION

*Introduction*

Section 3111 creates liens on real property in favor of trust funds established pursuant to collective bargaining agreements in amounts equal to the fringe benefit contributions which are due under those collective bargaining agreements. Under section 3111, if an employer fails to make contributions, the trust fund can record a lien on the property where the work was performed and foreclose the lien to compel payment of the debt.

---

[2] Pacific Southwest Framing has not signed a collective bargaining agreement with CSCAC.

■ ERISA is a comprehensive federal statutory scheme designed to promote the interests of employees and their beneficiaries in employee benefit plans. (*Shaw* v. *Delta Airlines, Inc.* (1983) 463 U.S. 85, 90 [77 L.Ed.2d 490, 497, 103 S.Ct. 2890].) "[ERISA] imposes participation, funding, and vesting requirements on pension plans. . . . As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.' S. Rep. No. 93-127, p. 36 (1973). Prominent among these safeguards [is] . . . § 514(a), 29 U.S.C. § 1144, ERISA's broad pre-emption provision . . . ." (*Ingersoll-Rand Co.* v. *McClendon* (1990) 498 U.S. __, __ [112 L.Ed.2d 474, 482-483, 111 S.Ct. 478, 482] (hereafter *Ingersoll-Rand*).)

■ We must decide whether ERISA's broad preemption provision encompasses section 3111. We conclude that it does. ■ " '[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. "The purpose of Congress is the ultimate touchstone." ' [Citations.] To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute. [Citations.] . . . [¶] Where, as here, Congress has expressly included a broadly worded pre-emption provision in a comprehensive statute such as ERISA, our task of discerning Congressional intent is considerably simplified." (*Ingersoll-Rand, supra*, 498 U.S. at p. __ [112 L.Ed.2d at p. 483, 111 S.Ct. at p. 482].)

Section 514(a) of ERISA expressly preempts "any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ." (29 U.S.C. § 1144(a), italics added.) Section 514(c) of ERISA defines the terms used in section 514(a): "(1) The term 'State Law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . . [¶] (2) The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." (29 U.S.C. § 1144(c).)

CSCAC argues that ERISA preempts only those state laws that regulate the terms and conditions of ERISA plans. This argument derives from the phrase "purports to regulate," which appears in the definition of "State" in section 514(c)(2) of ERISA. (29 U.S.C. § 1144(c)(2).) The case law, however, does not support CSCAC's argument. All that is necessary to invoke ERISA's statutory preemption provision is that the state law in question "relate to" an ERISA plan. As will be shown, section 3111 "relates to" such

plans by creating a mechanism for enforcing an employer's contribution obligations that Congress did not provide.

Furthermore, even if we were to accept for the sake of argument CSCAC's proposition that a state law, to be preempted, must regulate an ERISA plan, section 3111 still would be preempted. Although section 3111 does not specifically require that certain terms be included in a plan, it does purport to regulate the conditions under which the terms of a plan can be enforced. The section does so by creating an additional cause of action for enforcing contribution obligations and by making an additional entity liable for such contributions. (See *Iron Workers Pension Fund* v. *Terotechnology* (5th Cir. 1990) 891 F.2d 548, 553 (hereafter *Iron Workers*).)

### The Breadth of Federal Preemption Under ERISA

The United States Supreme Court in a series of opinions has emphasized the unusual breadth of ERISA's express preemption provision, describing section 514(a) of ERISA as a "virtually unique pre-emption provision" (*Franchise Tax Bd.* v. *Laborers Vacation Trust* (1988) 463 U.S. 1, 24, fn. 26 [77 L.Ed.2d 420, 440, 103 S.Ct. 2841]), and as a clause "conspicuous for its breadth." (*FMC Corp.* v. *Holliday* (1990) 498 U.S. __, __ [112 L.Ed.2d 356, 364, 111 S.Ct. 403, 407].) The court has also characterized the provision as "deliberately expansive" (*Pilot Life, supra*, 481 U.S. at p. 46 [95 L.Ed.2d at p. 46], citing *Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504, 523 [68 L.Ed.2d 402, 416, 101 S.Ct. 1895]), and as "establish[ing] as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." (*FMC Corp.* v. *Holliday, supra*, 498 U.S. at p. __ [112 L.Ed.2d at p. 364, 111 S.Ct. at p. 407].)

■ Consistent with the foregoing, the high court has also interpreted broadly the statutory term "relate to." (29 U.S.C. § 1144(a).) Most recently, in *Ingersoll-Rand, supra*, the court explained that "[t]he key to § 514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.'" (*Ingersoll-Rand, supra*, 498 U.S. at p. __ [112 L.Ed.2d at p. 483, 111 S.Ct. at p. 482], citations omitted.) This is consistent with the court's previous instruction in *Pilot Life* that "'a state law "relate[s] to" a benefit plan, "in the normal sense of the phrase, if it has a connection with or reference to such a plan."'" (*Pilot Life, supra*, 481 U.S. at p. 47 [95 L.Ed.2d at p. 48], citations omitted.) "Because of the breadth of the preemption clause and the broad remedial purpose of ERISA, 'state

laws found to be beyond the scope of [section 514(a) of ERISA] are few.'" (*Cefalu* v. *B. F. Goodrich Co.* (5th Cir. 1989) 871 F.2d 1290, 1294, fn. omitted.)

In determining whether section 3111 "relates to" a benefit plan, we take note that the United States Supreme Court has on several occasions stated that "state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a) [of ERISA]." (*Mackey* v. *Lanier Collection Agency & Serv.* (1988) 486 U.S. 825, 829 [100 L.Ed.2d 836, 843, 108 S.Ct. 2182], citing *Pilot Life*, *supra*, 481 U.S. at pp. 47-48 [95 L.Ed.2d at pp. 47-48]; *Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724, 739 [85 L.Ed.2d 728, 740, 105 S.Ct. 2380].) Indeed, the court has "virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted under § 514(a)." (*Mackey* v. *Lanier Collection Agency & Serv.*, *supra*, 486 U.S. at p. 829 [100 L.Ed.2d at p. 844].)

*Section 3111 Is Specifically Designed to Affect Employee Benefit Plans*

 Section 3111 is specifically designed to affect employee benefit plans. The section expressly refers to "trust fund[s] established pursuant to a collective bargaining agreement" and provides to such funds a mechanic's lien remedy not provided by Congress. Thus, section 3111 singles out ERISA plans for special treatment.

CSCAC argues that "ERISA trust funds receive no greater benefits under [section 3111] than any other party entitled to invoke the mechanics' lien remedy." To be sure, section 3111 does treat ERISA plans the same as other parties whose claims are based on having furnished labor or materials for a construction project. The significant difference, however, is that ERISA plans do not furnish labor or materials for construction projects. Accordingly, to treat them as persons who do furnish labor or materials is to single them out for special treatment.[3] Because section 3111 singles out ERISA plans for special treatment and is, in fact, designed to affect them specifically, we conclude the statute "relates to" ERISA plans.[4]

---

[3] Another significant difference between ERISA plans and other persons whose claims are based on furnishing labor or materials is that the latter assert their claims under section 3110. Section 3111 is specifically for the use of express trust funds established pursuant to collective bargaining agreements.

[4] CSCAC contends that because section 514(a) of ERISA refers to "plans" and section 3111 refers to "trust funds," section 3111 is not preempted by ERISA. However, other statements and arguments made by CSCAC belie the contention that section 3111 does not affect ERISA *plans*. For example, CSCAC states that the "Carpenters Trust Funds are employee

*Preemption Does Not Require Regulation of the Terms and Conditions of an ERISA Plan*

 Contrary to CSCAC's argument, it is well settled that a state law need not regulate the terms and conditions of an ERISA plan for preemption to apply. The United States Supreme Court has rejected the similar argument that the statutory term "purports to regulate" in section 514(c)(2) of ERISA causes section 514(a) of ERISA to preempt only those state laws that affect a plan's terms, conditions, or administration. (*Ingersoll-Rand, supra*, 498 U.S. at p.___ [112 L.Ed.2d at p. 485, 111 S.Ct. at p. 484].) In rejecting this argument, the court stated that, "[the argument] misreads § 514(c)(2) [of ERISA] and consequently misapprehends its purpose. . . . Section 514(c)(2) expands, rather than restricts, [the] definition [of State] for pre-emption purposes in order to *'include'* state agencies and instrumentalities whose actions might not otherwise be considered state law. Had Congress intended to restrict ERISA's pre-emptive effect to state laws purporting to regulate plan terms and conditions, it surely would not have done so by placing the restriction in an adjunct definition section while using the broad phrase 'relate to' in the pre-emption section itself. Moreover, if § 514(a) [of ERISA] were construed as [defendant] urges, the 'relate to' language would be superfluous—Congress need only have said that 'all' state laws would be pre-empted. Moreover, our precedents foreclose this argument. In *Mackey*, the Court held that ERISA pre-empted a Georgia garnishment statute that *excluded* from garnishment ERISA plan benefits. [*Mackey* v. *Lanier Collections Agency & Serv., supra*, 486 U.S. at pp. 828, fn. 2, 830 (100 L.Ed.2d at pp. 843, 844).] Such a law clearly did not regulate the terms or conditions of ERISA-covered plans, and yet we found preemption. *Mackey* demonstrates that § 514(a) cannot be read so restrictively." (*Ingersoll-Rand, supra*, 498 U.S. at p.___ [112 L.Ed.2d at p. 485, 111 S.Ct. at p. 484].)[5]

pension benefit *plans* or employee welfare benefit *plans* within the meaning of ERISA; see 29 U.S.C. §§ 1002(1) and 1002(2)(a)." (Italics added.) Also, CSCAC argues that the mechanic's lien action codified in section 3111 provides an effective and necessary remedy for employee benefit *plans* to enforce an employer's promise to pay fringe benefit contributions and that preemption of section 3111 may affect the *plans'* ability to maintain benefit levels for their participants.

[5] The Court of Appeal originally decided this case by relying on *Carpenters Health & Welfare Trust Fund* v. *Parnas Corp.* (1986) 176 Cal.App.3d 1196 [222 Cal.Rptr. 668]. The *Parnas* case was decided before, and is inconsistent with, *Pilot Life*. Rather than using the "relate to" test, the *Parnas* decision used the much narrower preemption standard discussed above: "ERISA's preemption of 'State law' is only of such laws as regulate the *'terms and conditions'* of employer benefit plans." (*Parnas, supra*, 176 Cal.App.3d at p. 1201, italics in original.) As the *Parnas* decision conflicts with *Pilot Life* and our decision in this case, it is disapproved. Similarly, *Sheet Metal Workers Pension Plan* v. *Columbia Savings & Loan Assn.* (1990) 221

*Section 3111 Also Regulates ERISA Plans*

Even though a state law need not regulate ERISA plans to be preempted, a finding that a state law does regulate ERISA plans necessarily includes a finding that the law "relates to" such a plan. (*Local Union 598 Etc.* v. *J.A. Jones Const. Co.* (9th Cir. 1988) 846 F.2d 1213, 1218, affd. (1988) 488 U.S. 881 [102 L.Ed.2d 202, 109 S.Ct. 210] (hereafter *Jones*).)⁶ Section 3111 regulates ERISA plans by creating a funding mechanism not provided by Congress. Hence, the fact that section 3111 regulates ERISA plans provides further support for the conclusion that section 3111 "relates to" ERISA plans and is preempted.

Federal case law directly on point supports our view that section 3111, by creating an additional funding mechanism for ERISA plans not provided for by Congress, "regulates," and hence "relates to," ERISA plans and is for that reason preempted. In *Iron Workers, supra*, 891 F.2d 548, the Fifth Circuit considered a Louisiana mechanic's lien law that was functionally identical to section 3111. Borden Chemical had entered into a contract for maintenance services with Terotechnology Corporation. A trade council, on behalf of several unions, executed a collective bargaining agreement with Terotechnology for work to be performed at the Borden plant. The agreement required Terotechnology to contribute to employee benefit funds for the work by its employees at the Borden plant. After a period of compliance, Terotechnology stopped contributing. The unions and funds filed liens pursuant to Louisiana's Private Works Act against Borden's real property. The Fifth Circuit held that the Louisiana law, because it created an additional method of enforcing the funding requirements of employee benefit plans, was preempted under section 514(a) of ERISA.

■ In reaching its conclusion, the *Iron Workers* court discussed the kinds of state laws that have been found to "relate to" employee benefit plans: "The state laws that have previously been found to be preempted by section 514(a) [of ERISA] because they 'relate' to ERISA plans fall into four categories[: (1)] laws that regulate the type of benefits or terms of ERISA plans[; (2)] laws that create reporting, disclosure, funding or vesting requirements for ERISA plans[; (3)] laws that provide rules for the

---

Cal.App.3d Supp. 21 [270 Cal.Rptr. 608], which relies on *Parnas* in concluding that section 3111 is not preempted, is disapproved.

⁶In discussing the interrelationship of the "purports to regulate" and "relate to" language, the Ninth Circuit Court of Appeals stated, "[t]he narrower 'purports to regulate' test is included within the broader 'relates to' test. [Citations.] Thus a finding that a statute 'purports to regulate' an employee benefit plan necessarily includes a finding that it 'relates to' such a plan." (Fn. omitted. *Jones, supra*, 846 F.2d at p. 1218.)

calculation of the amount of benefits to be paid under ERISA plans[; and (4)] laws and common law rules that provide remedies for misconduct growing out of the administration of the ERISA plan. The principle underlying all of these decisions [preempting state laws] would appear to be that the state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is 'part of the administration of an employee benefit plan': that is, *the state law is preempted if it regulates the matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement of benefit plans."* (*Iron Workers, supra,* 891 F.2d at p. 553, italics added.)

 Section 3111 specifically purports to regulate employee benefit plans by providing an additional method of funding, a lien against real property, which is not provided by, and therefore is not allowed under, ERISA. In essence, section 3111 creates a new state cause of action for the collection of contributions owed to benefit plans and makes an additional entity liable for such contributions. Lien actions under section 3111, which are governed by state law, are not subject to the jurisdiction of the federal courts under ERISA. (*Carpenters Southern Cal. Admin.* v. *Majestic Housing* (9th Cir. 1984) 743 F.2d 1341, 1346.)[7]

ERISA preempts new state-law causes of action for the collection of contributions because, consistent with its goal of providing "appropriate sanctions and ready access to federal courts" (29 U.S.C. § 1001(b)), ERISA itself provides the remedies for the collection of contributions. Section 502(a) of ERISA (29 U.S.C. § 1132(a)) provides in part that "[a] civil action may be brought—. . . [¶] (3) by a participant, beneficiary, or *fiduciary* (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) *to enforce any provisions of this title or the terms of the plan."* (29 U.S.C. § 1132(a)(3), italics added.)

Additionally, section 515 of ERISA (29 U.S.C. § 1145) provides: "Delinquent Contributors. Section 515. Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such an agreement." Hence, a participant, beneficiary or a fiduciary can bring an action under section 502(a) of

---

[7] In *Majestic Housing, supra,* the Ninth Circuit Court of Appeals considered the connection between section 3111 and ERISA. The court held that "[an] action to enforce [a] lien against Majestic's property [was] one under state, and not federal law. Consequently, the district court was without jurisdiction to rule on the motion for summary judgment." (*Id.* at p. 1346.)

ERISA (29 U.S.C. § 1132(a)) to enforce an employer's obligation under section 515 of ERISA (29 U.S.C. § 1145).[8]

■ As the Court of Appeal in this case and the federal court in *Iron Workers, supra,* noted, *Pilot Life, supra,* establishes that the remedies in section 502 of ERISA are exclusive and displace state laws which purport to create parallel remedies. "[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme. . . . The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The . . . carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" (*Iron Workers, supra,* 891 F.2d at p. 555, quoting *Pilot Life, supra,* 481 U.S. at p. 54 [95 L.Ed.2d at pp. 52], italics in original.) "The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, . . . would make little sense if the remedies available to ERISA participants and beneficiaries under § 502(a) [of ERISA] could be supplemented or supplanted by varying state laws." (*Pilot Life, supra,* 481 U.S. at p. 56 [95 L.Ed.2d at p. 53].)[9]

---

[8] CSCAC argues that ERISA, as originally enacted in 1974, did not include a cause of action for the collection of benefit contributions and, hence, Congress could not have intended to preempt state law causes of action. The dissent adopts CSCAC's position, arguing further that we must determine the scope of ERISA's preemption provision as of 1974, without regard to subsequent amendments. (Dis. opn., *post,* pp. 1059-1060.)

The premise of these arguments is incorrect. Even in 1974 ERISA contained a cause of action to enforce its terms, section 502 (29 U.S.C. § 1132), and the remedies provided in section 502 of ERISA are exclusive. With the addition of section 515 of ERISA (29 U.S.C. § 1145) in 1980, Congress sought only to streamline the process of collecting delinquent contributions exclusively under federal law. (See 126 Cong. Rec. 23029 (1980): "Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome . . . . Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law—other than 29 U.S.C. § 186.")

[9] Various amici curiae have asserted that section 3111 is saved from preemption by a statement in the legislative history of the Multiemployer Pension Plan Amendments Act of 1980 (Pub.L. No. 96-364, 94 Stat. 1208 [hereafter Amendments]). We disagree. The Amendments, among other things, added section 515 of ERISA (29 U.S.C. § 1145) and revised section 502(g) of ERISA (29 U.S.C. § 1132(g)) pertaining to awards of attorney fees, costs, and liquidated damages in actions for delinquent contributions.

Commenting on the statutory provisions of section 502(g) of ERISA (29 U.S.C. § 1132(g)), the relevant House committee stated: "The Bill preempts any state or other law which would prevent the award of reasonable attorney's fees, court costs or liquidated damages, or which would limit liquidated damages to an amount below the twenty percent level. However, the Bill does not preclude the award of liquidated damages in excess of the twenty

██ In essence, CSCAC's action under section 3111 is a civil action by a fiduciary to enforce the provisions of ERISA with regard to employer contributions (i.e., § 502(a) of ERISA, 29 U.S.C. § 1132(a) & § 515 of ERISA, 29 U.S.C. § 1145) and to enforce the terms of the plan (i.e., the funding contributions required by the collective bargaining agreement). Like the Louisiana law in *Iron Workers, supra,* 891 F.2d 548, the state is attempting to "regulate" the terms and conditions of a pension plan through the use of a new cause of action, its lien laws. State laws, however, may not be used to supplement or supplant the civil enforcement scheme developed by ERISA. (See *Pilot Life, supra,* 481 U.S. at p. 56 [95 L.Ed.2d at p. 53].)

In summary, by providing an additional cause of action to those already provided by ERISA, section 3111, like the Louisiana law in *Iron Workers* (*supra,* 891 F.2d 548), "regulates" ERISA plans. This recognition further supports the conclusion that the section "relates to" ERISA plans and is, thus, preempted.

### Other Arguments

Invoking *Mackey* v. *Lanier Collections Agency & Serv., supra,* 486 U.S. 825 [100 L.Ed.2d 836, 108 S.Ct. 2182] (*Mackey*), CSCAC argues that section 3111 is not preempted because it is an "ancillary state collection remed[y]." In *Mackey,* a creditor sought to garnish money that an ERISA plan owed to its beneficiaries, who were the creditor's debtors. The *Mackey* court analyzed a Georgia antigarnishment statute and Georgia's general garnishment procedures. The court concluded that a Georgia statute that barred the garnishment of funds or benefits of an employee benefit plan subject to ERISA was preempted by ERISA. The court held that this antigarnishment statute expressly referred to, and solely applied to, ERISA plans, and that state laws which make reference to ERISA plans are laws

---

percent level if an award of such a higher level of liquidated damages is permitted under state or other law. The Committee Amendment does not change any other type of remedy permitted under state or federal law with respect to delinquent multiemployer contributions." (H.R. No. 96-868, pt. 2, on H.R. No. 3909 of the House Com. on Ways and Means, 96th Cong., 2d Sess., pp. 3037-3038 (1980).)

Amici curiae argue that this section of the legislative history indicates that Congress did not intend to preempt state laws granting mechanic's lien rights to employee benefit plans. This reading of the House report is too broad. This single comment, pertaining to specific collateral remedies such as liquidated damages and attorney fees against delinquent employers, does not evidence a legislative intent to allow for remedies against delinquent employers that are not provided for in ERISA. Such an interpretation of this comment would vitiate the extensive legislative history of ERISA and the numerous United States Supreme Court statements regarding Congress's choice of certain enforcement provisions and the exclusion of all others.

that "relate to" those plans within the meaning of section 514(a) of ERISA (29 U.S.C. § 1144(a)). (*Mackey, supra,* 486 U.S. at p. 829 [100 L.Ed.2d at p. 843].) The ERISA plan beneficiaries in *Mackey* further argued that the entire Georgia garnishment procedure is preempted by ERISA. The United States Supreme Court held that Georgia's garnishment statute, as a generally applicable mechanism for the enforcement of judgments, was not preempted by ERISA. (*Id.* at p. 841 [100 L.Ed.2d at p. 851].)

*Mackey*'s analysis of Georgia's general garnishment procedures does not save section 3111 from preemption. The decision concerned a third party action for enforcement of judgments against beneficiaries of an ERISA plan. ERISA does not contain remedial provisions for such actions. Largely for this reason, the United States Supreme Court concluded that "state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan." (*Mackey, supra,* 486 U.S. at p. 834 [100 L.Ed.2d at p. 846].) The present case is not similar because ERISA expressly provides remedies for recovery of delinquent contributions to employee benefit plans.

Furthermore, in holding that the Georgia garnishment statute was not preempted, the high court noted that the statute "create[d] no substantive causes of action, nor new bases for relief, or any grounds for recovery; [it] does not create the rule of decision in any case affixing liability." (*Mackey, supra,* 486 U.S. at p. 834, fn. 10 [100 L.Ed.2d at p. 847].) In contrast, California's trust fund lien statute does more than provide a new enforcement mechanism for collecting judgments; it creates new substantive rights. (Cf. *Iron Workers, supra,* 891 F.2d at p. 555.) Section 3111 permits the creditor (the trust fund) to enforce a debt (for outstanding fringe benefit contributions) not against the debtor (the defaulting employer), but against the property of a third party that is not a party to the collective bargaining agreement. Section 3111 gives a trust fund a right to a lien against the property of third parties, such as El Capitan, that the fund would not, and does not, have under ERISA. In the absence of section 3111, El Capitan would have no liability to the funds for the fringe benefit contributions. Therefore, section 3111 cannot be upheld under *Mackey* as it creates a new substantive right against the property of a third party that is not created by ERISA and, thus, goes beyond being a mere means of enforcing a judgment. (See *Iron Workers, supra,* 891 F.2d at p. 556.)

CSCAC next argues that section 3111 is not preempted because "[i]t regulates land rights, historically a power reserved to the state." ■ However, "[i]n order to avoid preemption, it is not sufficient that a state statute

represent the exercise of traditional state power. [Citation.] A purported fundamental state interest is relevant only when there is an element of uncertainty as to whether the challenged state law falls within the scope of the ERISA preemption clause. . . . [¶] However, the strength of the state interest is of no consequence where the state law clearly 'purports to regulate' an employee benefit plan. 'In order to avoid being preempted, a state law in addition to being an exercise of traditional police powers must also *affect the plan "in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."'"* (*Jones, supra,* 846 F.2d at pp. 1220-1221, citations omitted, italics added.) Section 3111 does not affect ERISA plans merely in a "tenuous, remote, or peripheral" manner; instead, it has a substantive effect. The section makes an additional entity liable to plans for contributions. (See *Iron Workers, supra,* 891 F.2d at p. 556.)

Lastly, CSCAC argues that section 3111 "provides an effective and necessary remedy for employee benefit plans." That this may be so is irrelevant. The United States Supreme Court has specifically held that even state laws which may help to effectuate ERISA's underlying purposes are still preempted. (*Mackey, supra,* 486 U.S. at pp. 829-830 [100 L.Ed.2d at p. 844].) In *Mackey,* the United States Supreme Court explained that " '[t]he pre-emption provision [of § 514(a)] . . . displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.' *Metropolitan Life Ins. Co.* v. *Massachusetts,* [471 U.S. 724, 739] . . . . *Legislative 'good intentions' do not save a state law within the broad pre-emptive scope of § 514(a)."* (*Mackey, supra,* 486 U.S. at pp. 829-830 [100 L.Ed.2d at p. 844], italics added.) Thus, the fact that the trust fund lien procedure may provide a remedy useful to CSCAC is irrelevant.

### DISPOSITION

For the foregoing reasons, we conclude that Civil Code section 3111 is preempted by ERISA. The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Kennard, J., Arabian, J., and Baxter, J., concurred.

**BROUSSARD, J.**—I dissent. In *Mackey* v. *Lanier Collection Agency & Service* (1988) 486 U.S. 825 [100 L.Ed.2d 836, 108 S.Ct. 2182] (hereafter *Mackey*), the United States Supreme Court adopted two fundamental rules for the construction and application of the express preemption provision (29 U.S.C. § 1144(a)) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.). The majority violate both of them.

*Mackey* also sets out three areas of state law which are not preempted. All three are applicable in the instant case. The majority ignore two areas and unduly limit the third. The majority opinion attempts to dispose of *Mackey* as a case which merely deals with garnishment. However, it is clear that the express statements and the reasoning of the high court are not limited to garnishment but provide broad instruction as to the state laws which are not preempted.

While it is, of course, proper to emphasize the broad language used by the United States Supreme Court in describing the preemption clause of ERISA, we may not stop there, but must also recognize the limitations on preemption. And when we recognize the correct function of a mechanic's lien and the relationship of the lien provided by Civil Code section 3111 to employee compensation, it is clear under *Mackey* that we may not discriminate against ERISA plans by denying them liens given to others similarly situated, that we may not discriminate against ERISA plan members in providing remedies for recovery of compensation, that Congress did not intend to preempt state law liens, including mechanics' liens, and that, although probably not essential to the decision in the instant case, Congress intended to permit certain state law actions by ERISA plans to recover delinquent employer contributions.

## I. The Preemption Clause and Its Expansive Nature

The preemption clause of ERISA is very broad and encompassing, and although it could be read as preempting the application of state law in any case in which an ERISA plan is a party, it is settled that state law can be applied to some cases involving ERISA plans and that we look to congressional intent in determining which state laws may be applied. The clause preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ." (29 U.S.C. § 1144(a), italics added.) "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." (29 U.S.C. § 1144(c)(1).)

The United States Supreme Court has characterized the provision as "deliberately expansive" (*Pilot Life Ins. Co.* v. *Dedeaux* (1986) 481 U.S. 41, 46 [95 L.Ed.2d 39, 46, 107 S.Ct. 1549]), and as establishing "as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." (*FMC Corp.* v. *Holliday* (1990) 498 U.S. __, __ [112 L.Ed.2d 356, 364, 111 S.Ct. 403, 407].) A state law relates to a benefit plan, in the normal sense of the phrase, " 'if it has a

connection with or reference to such a plan.' " (*Pilot Life Ins. Co.* v. *Dedeaux*, *supra*, 481 U.S. 41, 47 [95 L.Ed.2d 39, 48].)

The language of the preemption provision and of the United States Supreme Court cases is so broad that it could be understood as meaning that state law could never be applied in litigation involving an ERISA plan, except in cases coming within the express exemption of the preemption clause for cases involving state laws regulating insurance, banking or securities. However, such a broad interpretation of the provision and the cases would be improper.

" '[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. "The purpose of Congress is the ultimate touchstone." ' [Citations.] To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute. (See *FMC Corp.* v. *Holliday*, 498 U.S. __, __, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), citing *Shaw* v. *Delta Air Lines, Inc.*, *supra*, 463 U.S., at 95, 103 S.Ct., at 2898-99)." (*Ingersoll-Rand Co.* v. *McClendon* (1990) 498 U.S. __, __ [112 L.Ed.2d 474, 483, 111 S.Ct. 478, 482].)

In the recent case of *Ingersoll-Rand*, the high court addressed the purpose of the preemption clause. In that case a fired employee claimed that he was wrongfully terminated for the principal reason that his pension was about to vest after nearly 10 years of employment and that the employer sought to avoid the expense of the pension. The court explained the purpose of the preemption provision as follows: The preemption provision "was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries. *FMC Corp.*, 498 U.S. at __, 111 S. Ct., at 408 (citing *Fort Halifax*, 482 U.S., at 10-11, 107 S.Ct., at 2216-17); *Shaw*, 463 U.S. at 105, and n. 25, 103 S.Ct., at 2904, and n. 25.) Allowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through [the preemption provision]. Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." (*Ingersoll-Rand Co.* v. *McClendon*, *supra*, 498 U.S. __, __ [112 L.Ed.2d 474, 486, 111 S.Ct. 478, 484].)

## II. Congressional Intent and the Preemption Clause

The majority, in applying ERISA's express preemption clause, rely upon 29 United States Code section 1145, which requires that employers who have agreed to make contributions to a multiemployer plan shall make those contributions to the extent not inconsistent with law. This provision provides federal causes of action to recover employer delinquencies. However, the section was not part of ERISA as originally enacted and for this reason it furnishes no support for the view that the preemption clause in ERISA preempted such causes of action. In *Mackey*, the United States Supreme Court made clear that in interpreting the preemption clause of ERISA, the congressional intent to be determined is the intent of the Congress that enacted the preemption clause and not the intent of subsequent Congresses. "[W]e must look at the language of ERISA and its structure, to determine the intent of the Congress that originally enacted the provision in question. 'It is the intent of the Congress that enacted [the section] . . . that controls.' *Teamsters* v. *United States*, 431 U.S. 324, 354, n. 39 (1977)." (*Mackey*, *supra*, 486 U.S. at p. 840 [100 L.Ed.2d 851, 108 S.Ct. at p. 2191.)

The provisions of 29 United States Code section 1145 were added to ERISA in 1980 as part of the Multiemployer Pension Plan Amendments Act. Since it was not part of ERISA as originally enacted, it is improper for the majority to rely upon it in construing the express preemption provision.

Moreover, even if it were proper to consider the Multiemployer Pension Plan Amendments Act of 1980 in construing the express preemption provision, the entire 1980 act and its legislative history must be considered, and when this is done it must be concluded that Congress sought to retain state law actions to recover delinquencies and only intended a limited preemption of state law governing actions to recover delinquencies. As will be pointed out later in this opinion in connection with implied preemption, it is clear that Congress, when it enacted the Multiemployer Pension Plan Amendments Act of 1980, *expressly* provided for the application of state law to actions for recovery of delinquencies in certain circumstances (29 U.S.C. § 1132(g)), and that the legislative history of the act shows that Congress intended the preemption of state law only where it limited recovery against the employer to an amount less than federal law provided. The majority ignore 29 United States Code section 1132(g) and the legislative history dealing with preemption.

Accordingly, at the outset, we must conclude that the provisions of 29 United States Code section 1145 may not be considered in construing the

preemption clause or to show an intent on the part of the Congress to preempt state laws permitting recovery for employer delinquencies equal to or greater than that permitted by federal law.

### III. LAWS SPECIFICALLY DESIGNED TO AFFECT ERISA PLANS

In *Mackey*, the high court stated that it has "virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted" under the preemption clause. (*Mackey, supra*, 486 U.S. at p. 829 [100 L.Ed.2d at p. 844, 108 S.Ct. at p. 2185.]) On the basis of this rule the high court invalidated a Georgia statute that exempted ERISA plans from the state's garnishment law. (*Ibid.*) The majority in their bottom line—by exempting ERISA plans from mechanic's lien laws—violate the rule against special treatment of ERISA plans.

As pointed out above, the express preemption provision applies to "any and all State laws." That term applies not merely to statutes but also to "decisions . . . having the effect of law of any State." (29 U.S.C. § 1144(c)(1).) Accordingly, just as it is ordinarily improper for the Legislature to adopt statutes specifically designed to affect ERISA plans, it is improper for this court through its decisions to establish laws specifically designed to affect ERISA plans.

The ultimate effect of the majority opinion is to subject ERISA plans and members of ERISA plans to special treatment. Civil Code section 3110 grants mechanics' liens to numerous specifically identified persons for services rendered when such persons have been unpaid and have contributed to an improvement. Civil Code section 3111 provides the same mechanic's lien for ERISA plans which administer fringe benefits like health insurance and pension benefits. By permitting those enumerated in Civil Code section 3110 to obtain liens but denying liens to ERISA plans, the majority single out ERISA plans for special treatment. The payments to the ERISA plan sought to be recovered are part of the compensation of those who furnish labor for the improvement. The net effect of the state law established by the majority is that employees who are not members of ERISA plans obtain liens for their entire unpaid compensation, whereas those who are members and receive part of their compensation through ERISA plans obtain a lien for only part of their compensation.

The majority seek to justify the special treatment of ERISA plans by asserting that, unlike those mentioned in Civil Code section 3110, ERISA plans do not furnish labor or materials to the construction project. (Maj. opn., *ante*, p. 1049.) However, as I demonstrate, the ERISA claim is part of

the compensation for the worker and must be treated the same as the other compensation.

The cases have recognized that the claims of the ERISA plans are part of the employee's compensation and must be treated the same as the compensation. In *Plumber's Local 458* v. *H. Immel, Inc.* (1989) 151 Wis.2d 233, [445 N.W.2d 43, 44-45], the mechanic's lien statute provided for a lien for "any person furnishing labor," and the court concluded that the lien statute could not be restricted to hourly wages but included claims by ERISA plans for funds for fringe benefits.

Similarly, in the closely analogous situation presented in *United States* v. *Carter* (1956) 353 U.S. 210 [1 L.Ed.2d 776, 77 S.Ct. 793], the issue was the liability of a surety to fringe benefit funds on a payment bond furnished by a contractor, as required by the Miller Act (40 U.S.C. § 270a et seq.), for the protection of persons furnishing labor or materials for the construction of federal buildings. The statute provided that every "person who has furnished labor or material in the work provided for in such contract . . . shall have the right to sue on such payment bond . . . for the sum justly due him." (40 U.S.C. § 270b(a). The court stated: "The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." (353 U.S. at p. 216 [1 L.Ed.2d at p. 782].) Among the protection under state statutes, obviously, is the mechanic's lien statute applying to private buildings; thus, the issue is clearly analogous. Notwithstanding that the statute was phrased in terms "furnished labor," the court concluded that the fringe benefit funds could maintain an action on the bond. The court reasoned in part that the "contributions were a part of the compensation for the work to be done by [the] employees" and that trustees "stand in the shoes of the employees and are entitled to enforce their rights." (*Id.*, at pp. 217-218, 220 [1 L.Ed.2d at pp. 783-784]; see *Morrison-Knudsen Constr. Co.* v. *Director, OWCP* (1982) 461 U.S. 624, 631 [76 L.Ed.2d 194, 200, 103 S.Ct. 2045].)

A similar view is found in our code sections dealing with stop notices and state payment bonds (the state Miller Act counterpart), which treat claims by laborers and ERISA plans as being the same thing. (See Civ. Code, §§ 3181, 3247.)

Our court has long recognized the basic principle that claims for fringe benefits are part of the compensation and must be treated accordingly as to creditors' rights. Thus in *Dunlop* v. *Tremayne* (1965) 62 Cal.2d 427 [42

Cal.Rptr. 438, 398 P.2d 774, 17 A.L.R.3d 368], we held that under the preference statute applicable to assignments for the benefit of creditors, Code of Civil Procedure section 1204, health, welfare, and pension contributions would be included under the term "wages." The court reasoned: "The terms and conditions of the payments were ascertained by the employers and representatives of the employees in wage negotiations, as part of a total wage package. Payments are made by the employer not as a gift but in consideration of the services of the employees. In an economic sense they are wages." (62 Cal.2d at p. 431.)

We cannot ignore the practical effect of our decisions. ERISA plans and others who have unpaid claims based on construction projects are usually unpaid because there are not enough funds to go around. To permit architects, engineers, surveyors, mechanics, laborers and others enumerated in Civil Code Section 3110 to obtain liens while denying liens to ERISA plans is to make ERISA plans second-class creditors. The effect of the preference will ordinarily mean that Civil Code section 3110 creditors will have a preference and will receive all or part of their claims while ERISA plans will receive none. Making the plans second-class creditors flies in the face of ERISA's express policy to protect the interest of participants in the plans (29 U.S.C. § 1001(b), (c)) and, more particularly, ERISA's express policy "to provide reasonable protection for the interests of participants and beneficiaries of financially distressed multiemployer pension plans" and "to provide a financially self-sufficient program for the guarantee of employer benefits under multiemployer plans." (29 U.S.C. § 1001a(c)(3), (4).)

The express preemption clause in ERISA is directed at state law generally, including both statutory and decisional law. Whether special treatment of ERISA plans is accomplished by a statutory exemption from general law requirements as in *Mackey*, or by a decision of the court permitting application of a specific provision to everyone by enumerating them individually but leaving out ERISA plans, the effect is the same. The special treatment is preempted and, because the majority at the bottom line provide for special treatment, the law enunciated in their decision is contrary to federal law and is thus preempted. Moreover, the decision discriminates against union employees belonging to multiemployer ERISA plans by denying them lien rights for the full amount of their compensation—while allowing non-ERISA employees liens for all of their compensation.

## IV. STATE LAWS NOT PREEMPTED

Congress has not preempted state lien laws.

*Mackey* establishes three classes of state laws that are not preempted.

The first class is those cases where Congress has provided for the application of state law. (*Mackey, supra,* 486 U.S. at p. 832 [100 L.Ed.2d at pp. 845-846, 108 S.Ct. at pp. 2186-2187].) As will appear in part VI of this opinion, Congress has expressly provided for the use of state law to enforce the duty to make payments to ERISA plans. "ERISA plans may be sued in a second type of civil action, as well. These cases—lawsuits against ERISA plans for run-of-the-mill claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace." (486 U.S. at p. 833 [100 L.Ed.2d at p. 846, 108 S.Ct. at p. 2187], fn. omitted.) As will also appear, mechanics' liens are such run-of-the-mill claims.

The third class was the one before the high court, garnishment. Because it was directly involved in *Mackey* it is treated first. The reasoning of the high court is much broader than garnishment used to collect a judgment, and it is improper to treat this part of the *Mackey* opinion, as the majority do (maj. opn., *ante,* at pp. 1054-1055), as merely establishing a garnishment exception to the preemption clause. The reasoning is applicable not merely to garnishment but to all enforcement mechanisms for collecting money judgments and also prejudgment mechanisms to secure the collection of debts, including liens such as the mechanic's lien before us. And, while *Mackey* obviously involved a suit against an ERISA plan, it is apparent the same view should apply when the plan sues.

In *Mackey,* the court reasoned: "ERISA does not provide an enforcement mechanism for collecting judgments won in either of these two types of actions. Thus, while [29 United States Code] section [1132(d)], the 'sue and be sued' provision, contemplates execution of judgments won against plans in civil actions, it does not provide mechanisms to do so. Moreover, Federal Rule of Civil Procedure 69(a), which would apply when either type of civil suit discussed above is brought against an ERISA plan in federal court, defers to state law to provide methods for collecting judgments. [Citation.] Consequently, state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan. If attachment of ERISA plan funds does not 'relate to' an ERISA plan in any of these circumstances, we do not see how respondent's proposed garnishment order would do so." (486 U.S. at pp. 833-834 [100 L.Ed.2d at p. 846, 108 S.Ct. at p. 2187], fn. omitted.)

Federal Rules of Civil Procedure, rule 69(a) (28 U.S.C.) provides that proceedings "supplementary to and in aid of a judgment, and in proceed-

ings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held." It follows that parties seeking to obtain a judgment lien must do so on the basis of state law. Since ERISA does not provide for judgment liens and, so far as I am aware, the federal government has not adopted a recording act for federal real property judgment liens, the proceedings to obtain and enforce judgment liens thus are entirely matters of state law even where the judgment is a federal judgment.

Generally, proceedings to establish and enforce liens are run-of-the-mill state law proceedings. The preliminary 20-day notice of intent to file a mechanic's lien (Civ. Code, §§ 3097, 3114) is probably the most often served legal document in our state. Similarly, mortgages and deeds of trust are probably among the most frequently recorded documents in this state, and, of course, the purpose of the recording is to establish the lien. The reconveyance to cancel the mortgage or deed of trust lien is recorded with equal frequency.

Furthermore, to conclude that state lien laws are preempted when ERISA plans are involved means that millions, perhaps billions, of dollars invested by ERISA pension plans in notes secured by mortgages and deeds of trust are jeopardized. Those liens, like mechanics' liens, provide an "additional cause of action" in the property of a fourth party, a party other than the employer, employee or the plan, and ERISA does not provide a method to enforce mortgages. To suggest that a Congress which adopted a comprehensive law to protect the interests of participants in employee benefit plans (29 U.S.C. § 1001(b)) intended to preempt state lien laws strains credulity.

Generally, state law prejudgment mechanisms for securing the ultimate payment of debts are utilized by the federal courts. While Federal Rules of Civil Procedure, rule 69(a) provides for the adoption of state law methods to obtain collection after judgment, rule 64 of the Federal Rules of Civil Procedure provides for the adoption of prejudgment state law methods to secure payment of debts. The rule provides that the remedies thus available "include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action." Under this provision it is clear that the builders of a building for an ERISA plan and their workers should be able to secure and enforce in federal court (when jurisdiction is proper) a mechanic's lien arising against the property under state law. Likewise, ERISA plans under this provision should be entitled to enforce state law liens, including mechanics' liens.

No distinction may be made as to liens arising from the provisions of ERISA plans and other liens in favor or against ERISA plans. In *Mackey*, the Solicitor General argued that while other types of garnishment may be permitted with respect to ERISA plans, the court should not permit garnishment when it will affect whether benefits will be paid to a plan participant. ERISA expressly provides that a participant or beneficiary may bring an action to recover benefits due, to enforce rights under the plan, to clarify rights under the plan and to obtain equitable relief (29 U.S.C. § 1132(a)(1)(B), (a)(3)), and *Pilot Life Ins. Co.* v. *Dedeaux, supra*, 481 U.S. 41 (hereafter *Pilot Life*), held that ERISA preempted state law causes of action by a participant or beneficiary to enforce his or her rights.

The *Mackey* court rejected the Solicitor General's argument on the ground that the preemption clause did not permit the distinction—it could not be held that the garnishment did not "relate to" the plan when third parties were involved but did "relate to" the plan when the rights of plan participants were involved. (486 U.S. at p. 836 [100 L.Ed.2d at p. 848, 108 S.Ct. at pp. 2188-2189.) Similarly, here, it may not be concluded that mechanics' liens do not "relate to" the plan when laborers or suppliers seek to establish liens against an office building built by a plan, but "relate to" the plan when it seeks to recover employer contributions.

The majority argue that Civil Code section 3111 creates new substantive rights permitting the plan to enforce a debt against property of a third party that is not a party to the collective bargaining agreement. (Maj. opn., *ante*, p. 1055) However, the lien does not create personal liability of the owner. It has long been recognized that the lien of the mechanic, artisan and supplier is equitable because those parties have created the very property upon which the lien attaches. (*Tuttle* v. *Montford* (1857) 7 Cal. 358, 360; *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 825-827 [132 Cal.Rptr. 477, 553 P.2d 637].) Obviously, return of the materials or labor to the unpaid supplier or laborer is not a viable option, and the law's recognition of the unpaid supplier's and laborer's contributions to the improvement does not create a debt or personal liability on the part of the owner, but only an interest in the property they helped create.

The fact that the mechanic's lien may provide a priority against third parties, so that if the debt is unpaid the lienor may proceed to the detriment of third parties, does not mean that a personal cause of action is created. The effect of a lien against property is to give the lienor priority against some other claimants to the property, such as owners, subsequent mortgagees, judgment lienors or purchasers. In other words, the fact that a lien may prejudice third party claimants is not unique to mechanics' liens but is common to all liens, and the effect in all cases is to give the lienor an

actionable claim against the property affecting third parties with lesser priority. Only when the employer and the owner are the same, such as a specification builder, will the owner be individually liable, and then its liability exists even though the plan does not seek to enforce the lien. As we have seen, the ERISA plan merely stands in the shoes of the workers and seeks recovery of their compensation, so its lien also is based upon the creation of the very property upon which the lien attaches.

The fact that California has created a cause of action limited to property rights of a third party does not mean there is preemption. The Georgia garnishment statute upheld in *Mackey* created a cause of action in favor of a third party against ERISA plans. ERISA is fundamentally concerned with the relationship between the members of the plan, employers, and the plan and its fiduciary, and hardly any of its provisions are concerned with the rights and duties of third parties.

I conclude that ERISA, which does not preempt state laws providing mechanisms to collect judgments, also does not preempt state laws providing prejudgment mechanisms to secure the payment of debts such as liens, and that this is true even if Congress has preempted causes of action to collect the debt.

## V. THE CAUSE OF ACTION TO RECOVER EMPLOYER PAYMENTS

Since the instant case involves a state law lien which is not preempted whether or not the related cause of action to collect the debt is preempted, it does not seem necessary to reach the issue whether ERISA's preemption clause preempts actions to enforce the agreed payment. Nevertheless, I will deal with the issue because the majority address it. My conclusion is that ERISA, as originally enacted, did not provide a federal cause of action for plans to recover a money judgment against delinquent employers and that, if state law causes of action were found preempted, the fundamental congressional purpose of protecting employee benefits would be defeated.

As pointed out above, in interpreting the preemption clause we look to the intent of the Congress that enacted the clause and consider the structure of ERISA. In a comprehensive statute to regulate ERISA plans there are obviously three areas requiring regulation, namely, the relationship between the employer and the ERISA plan, the operation of the plan in using the assets, and the relationship between the plan and its members and beneficiaries.

The civil enforcement section of ERISA, as originally enacted, provided for a federal cause of action by a participant or beneficiary to recover

benefits due from an ERISA plan, to enforce rights under the plan terms, and to clarify future rights. (29 U.S.C. § 1132(a)(1)(B).) A federal cause of action was also provided for actions by the Secretary of Labor, participant, beneficiary, or fiduciary against fiduciaries for breach of duty by a fiduciary. (29 U.S.C. § 1132(a)(2).) There was a general provision to enforce the terms of the plan, but that provision was limited to equitable relief. Subparagraph (3) of 29 United States Code section 1132(a) provided for an action "by a participant, beneficiary or fiduciary (A) to *enjoin* any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate *equitable* relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." (Italics added.)

It is apparent that subparagraph (3) of 29 United States Code section 1132(a) only provides for equitable proceedings. Because subparagraph (1) of 29 United States Code section 1132(a) expressly provides for causes of action to recover benefits due to participants and beneficiaries, and because they are mentioned along with fiduciaries in subparagraph (3), it is clear that the latter subparagraph does not authorize an action at law to recover a money judgment against delinquent employers, and that as originally enacted Congress did not provide for such a federal cause of action. The fact that in 1980 Congress found it necessary to add provisions for a money judgment against a delinquent employer (29 U.S.C. §§ 1145, 1132(g)) lends support to the conclusion that, as originally enacted, ERISA did not provide for such an action.

Once it is recognized that Congress did not provide a federal cause of action to recover delinquencies in ERISA as originally enacted, we must conclude that Congress did not intend to preempt such causes of action under state law. A conclusion that there was no action to collect employer delinquencies under either federal or state law would simply defeat the fundamental purpose of ERISA to protect employee benefit rights. (29 U.S.C. § 1001.) We cannot attribute such an intent to Congress.

## VI. IMPLIED PREEMPTION OF CAUSES OF ACTION FOR DELINQUENCIES

Even though the express preemption clause of ERISA did not preempt state law causes of action to recover money judgments for employer delinquencies, the question remains whether the 1980 amendments to ERISA in themselves established an intent to preempt the state law causes of action. Although the existence of a detailed regulatory scheme does not by itself imply preemption, special features of a law may do so, including that the state law provides a parallel scheme of federal rights. (See *Ingersoll-Rand*

*Co.* v. *McClendon, supra,* 498 U.S. __, __ [112 L.Ed.2d 474, 486-487, 111 S.Ct. 478, 484-486].)

The 1980 amendments included 29 United States Code section 1145, which imposed a federal duty upon employers to make their contributions to a multiemployer plan, and 29 United States Code section 1132(g), which provided the damages to be awarded in actions to enforce section 1145. However, 29 United States Code section 1132(g)(2)(C) expressly provides for application of state law in certain circumstances, and the legislative history of the 1980 enactment makes clear that the 1980 amendments were intended to retain state law causes of action and to preempt state law only insofar as it provided for lesser damages than those provided by Congress.

The fact that Congress has provided for damages to be fixed in part under state law contemplates state law causes of action to determine what are state law damages. The legislative history of the amendments makes clear that this is exactly what Congress contemplated.

The staff report of the Senate Committee of Labor and Human Relations states that the Multiemployer Pension Plan Amendments Act of 1980 was intended "to promote the prompt payment of contributions and assist plans in recovering the cost incurred in connection with delinquencies." (Staff Rep. of the Sen. Com. on Labor and Human Relations, Sen. No. 1076: Multiemployer Pension Plan Amendments Act of 1980, 96th Cong., 2d Sess., p. 44 (1980) Sen. Labor Com. Print.) Congress recognized that the instability of the construction industry caused funds to accrue benefit obligations without collecting sufficient contribution to fund those benefits. (H.R.Rep. No. 96-869(I), 2d Sess., p. 51 (1980), reprinted in 1980 U.S. Code Cong. & Admin. News, pp. 2918, 2921.) "The Bill preempts any state or other law which would prevent the award of reasonable attorney's fees, court costs or liquidated damages, or which would limit liquidated damages to an amount below the 20 percent level. *However, the Bill does not preclude the award of liquidated damages in excess of the 20 percent level where an award of such a higher level of liquidated damages is permitted under applicable State or other law. The Committee amendment does not change any other type of remedy permitted under State or Federal law with respect to delinquent multiemployer plan contributions.*" (1980 U.S. Code Cong. & Admin. News, *supra,* at pp. 3037-3038, italics added.)

It is thus clear that in 1980 Congress intended to retain state causes of action and did not intend to preempt state causes of action to recover delinquencies except to the extent that such causes of action precluded an award of damages provided by the 1980 amendments.

## VII. No Additional Remedies Language

In *Pilot Life*, the high court stated: "In sum, the detailed provisions of [29 United States Code section 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for *prompt and fair claims settlement procedures* against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan *participants and beneficiaries* were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in [29 United States Code section 1132(a)] as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." (481 U.S. at p. 54 [95 L.Ed.2d at p. 52], first and second italics added, third italics in original.)

In *Pilot Life*, it was held that a state law action for breach of the covenant of good faith and fair dealing brought by a plan participant for delay in paying benefits was preempted.

The majority rely upon the above quoted language in arguing that a state law cause of action to enforce claims for employer delinquencies is preempted. However, the language must be read in context, and within its own limitations. To read the quoted language broadly as meaning that states may not provide *any* remedies in cases involving ERISA plans would be *directly contrary* to the subsequent *Mackey* case, decided shortly after *Pilot Life*. *Mackey* held that state law garnishment and run-of-the-mill causes of action were not preempted. It is apparent that the high court is not reading the language so broadly as to generally preempt state law remedies involving third parties since neither the majority nor the dissent in *Mackey* saw fit to even discuss the language. By its own terms *Pilot Life*'s language is limited to cases involving claims by participants and beneficiaries, and as pointed out above, 29 United States Code section 1132(a) provides both a federal cause of action for damages and equitable relief in such cases. By contrast, the section as originally enacted provided only equitable relief where a plan sued to enforce the employer's promise to pay. There were not six carefully crafted remedies to sustain the rights of the plans. Additionally, the predicate for preemption is that Congress has provided remedies, but as pointed out above, Congress has not provided mechanisms, like liens, for collection of debts whether before or after judgment. I conclude that the broad language is inapplicable here because it is limited to actions by participants and beneficiaries, and to situations where Congress has provided remedies.

*Iron Workers Pension Fund* v. *Terotechnology* (5th Cir. 1990) 891 F.2d 548, 553, also relied upon by the majority (maj. opn., *ante*, p. 1053) is largely based on a broad reading of the no-additional-remedy language of *Pilot Life*. The court did not recognize that, as so read, *Pilot Life* would be in direct conflict with the later *Mackey* decision or that, even assuming that Congress provided a cause of action to collect delinquencies, it did not provide mechanisms to collect the amounts found due.

There also is no merit in the claim that Civil Code section 3111 is preempted because it imposes funding requirements. It does not establish the level of funding. It is no more a funding statute than statutes providing for attachment, garnishment, judgment liens, or mortgage liens are funding statutes.

## VIII. CONCLUSION

I conclude that Civil Code section 3111 is not preempted by ERISA. California law, whether due to statute or judicial decision, is preempted by ERISA if it singles out ERISA plans for special treatment. ERISA plans, in seeking the agreed payments, stand in the shoes of their members furnishing labor for improvements, and by treating the plans differently than other compensation claims, including those of nonmembers, the majority opinion, not the Legislature, provides special treatment for ERISA plans and their members.

Although the sweep of the preemption clause in ERISA is broad, it does not preempt state lien laws or other pretrial mechanisms for securing payment of debts. In addition, although the point probably need not be decided, the absence of any federal cause of action at law to recover a money judgment for employer delinquencies precludes finding that Congress intended, when the preemption clause was adopted, to preempt such state causes of action because such preemption would mean that there was no cause of action, state or federal, to recover payments promised to ERISA plans. Given the fundamental, expressed purpose of Congress to protect employee benefits, an intent to preclude all such actions cannot be attributed to Congress. In the Multiemployer Pension Plan Amendments Act of 1980, Congress sought to add new remedies to permit collection of employer delinquencies and sought to preempt state law remedies only insofar as they precluded the full recovery provided by federal law. The congressional history shows that Congress believed there were state remedies to recover delinquencies and intended to preserve them.

Civil Code section 3111 has not been preempted, and the judgment of the Court of Appeal should be reversed.

Mosk, J., concurred.